# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

GOLARS, LLC, DALEEN1, INC.,
SAIL CAPITAL INVESTMENTS, LLC,
WARREN TRAVEL PLAZA, INC., and
UNITED STATES SMALL BUSINESS
OWNERS ASSOCIATION, LLC, on behalf of
themselves, and all others similarly situated,

           Plaintiffs,

    v.

THE INDIANA DEPARTMENT OF
ENVIRONMENTAL MANAGEMENT and
DOUGLAS R. LOUKS, individually and in
his official capacity as IDEM OFFICE OF
LAND QUALITY, DEPUTY ASSISTANT
COMMISSIONER,

           Defendants.

Case No. 1:20-cv-01625-JPH-TAB

---

## DEFENDANT DOUGLAS R. LOUKS' AMENDED ANSWER TO PLAINTIFFS' CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Defendant Douglas R. Louks ("Louks"), by counsel, for his Answer to Plaintiffs' "Class Action Complaint for Injunctive Relief and Damages and Demand for Jury Trial" ("Complaint") states as follows:

### A. Louks' Answer to Plaintiffs' Non-Numbered Allegations

**Plaintiffs' Complaint includes various statements that are not specifically numbered, including a "Table of Contents," an "Index of Exhibits," and an unnumbered paragraph on page 1. Louks objects to these allegations, and to Plaintiffs' Complaint as a whole, because it does not constitute a "short and plain statement of the claim" as required by Fed. R. Civ. Proc. 8(a)(2). To the extent that these non-numbered allegations are considered allegations against Louks that require a response, they are denied in full.**

B.   **Louks' Answers to Plaintiff's Numbered Allegations**

1.   This case arises out of business related torts and environmental claims arising from a breach of legal obligations between the Plaintiff business entities and a State entity and employee trusted in overseeing and administrating State trust assets.

**ANSWER:   Louks denies all of the allegations in Paragraph 1 of the Complaint.**

2.   Golars is an environmental engineering and consulting firm that is certified by the State of Indiana as a Minority and Women's Business Enterprise (MBE/WBE). Golars combines the experience and expertise of veteran engineers, geologists, scientists, environmental risk managers, and project specialists to serve its clients' needs. Many of Golars' clients are new Americans of Indian descent, who own and operate independent retail gas stations and convenience stores. These owner-operators provide "essential services" under Governor Holcomb's Executive Orders for the Coronavirus Disease 2019 Outbreak, as they provide vital access to gasoline and food to rural and low income Hoosiers during the current pandemic.

**ANSWER:   Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 2 of the Complaint and therefore denies the same.**

3.   Beginning in early 2018 and continuing through the filing of this lawsuit, Louks, in his individual capacity and in his official capacity as IDEM OLQ Branch Chief of the Underground Storage Tank Branch and later as Assistant Deputy Commissioner, has maliciously targeted Golars and its clients by depriving them of their due process rights to seek reimbursement for the reasonable and necessary cost of corrective action to pay for the investigation and remediation of soil, groundwater, and vapor contamination resulting from gasoline released from

leaking registered underground storage tank ("UST") systems from the Excess Liability Trust Fund ("ELTF or "Fund").

**ANSWER:** **Louks denies all of the allegations in Paragraph 3 of the Complaint.**

4.      The first thing Louks did to maliciously target Golars and its clients, many of whom are new Americans of Indian descent, was to demand that the clients sign an agreement (Agreed Orders) to accept personal liability for the corrective actions, including any costs in excess of the ELTF cap, when these clients had no statutory liability or responsibility for the corrective actions. When Golars objected to IDEM's demands on behalf of its clients because IDEM's actions were arbitrary and capricious and had not been published or adopted through the proper rule making process, Louks did not relent but instead had the new and unlawful "ELTF Reimbursement Suspension Policy" (the "Policy"), published on IDEM's website. (The Policy was published on June 4, 2018, *see* https://www.in.gov/idem/tanks/2349.htm, last visited May 13, 2020.)

**ANSWER:** **Louks admits that, in his capacity as Branch Chief of the Underground Storage Tank Branch of IDEM's Office of Land Quality, he signed a two-page June 4, 2018 letter entitled "Electronic Submittal System, Data Reconciliation, and ELTF Reimbursement Suspension" with a three-page attachment entitled "UST Documentation and ELTF Reimbursement Guidelines" (hereinafter the letter and its attachment shall be referenced by Louks as the "Reimbursement Guidelines"). Louks further admits that the letter with its attachment was published by IDEM on its website. Louks denies all remaining allegations in Paragraph 4 of the Complaint.**

5.      Some of Golars' clients, including some of the named Plaintiffs, and members of the Class entered into such Agreed Orders because of IDEM's and Louks' coercive demands and fraudulent misrepresentations even though they knew IDEM's Policy was unlawful, while others

refused and had their ELTF claims improperly denied. Golars' client, Daleen1, challenged IDEM's application of the Policy by appealing IDEM's claims denial to the IDEM Office of Environmental Adjudication ("OEA"). Not only did the OEA declare that IDEM's Policy was unlawful, but the Indiana Attorney General also issued an opinion that the Policy was unlawful under Indiana law. IDEM did not appeal the OEA ruling.

**ANSWER:    Louks admits that (a) some individuals and entities, including Plaintiff Warren Travel Plaza Inc., voluntarily entered into Agreed Orders that resolved certain legal issues pertaining to ELTF claims; (b) Plaintiff Daleen1 filed an administrative appeal of an IDEM determination regarding an ELTF claim that resulted in judgment in favor of Daleen1; (c) IDEM did not appeal that ruling; and (d) on January 30, 2019, Attorney General Curtis Hill issued an opinion pertaining to ELTF reimbursements. Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 5 of the Complaint with regard to whether any of the entities who signed Agreed Orders were clients of Golars and therefore denies the same. Louks denies all remaining allegations in Paragraph 5 of the Complaint.**

6.     Despite the OEA ruling and Attorney General opinion declaring the Policy to be unlawful, IDEM has not rescinded the Policy, removed the Policy from its website, or rescinded the Agreed Orders that were signed by Golars' clients and other members of the Class, and IDEM has only made partial payments of ELTF claims for Golars' clients and other members of the Class who refused to enter into the Agreed Orders.

**ANSWER:    Louks admits that the Reimbursement Guidelines remain published on IDEM's website, that IDEM has not rescinded any Agreed Orders pertaining to ELTF**

**reimbursements, and that IDEM has not paid 100% of all ELTF claims submitted to it by Golars.  Louks denies all remaining allegations in Paragraph 6 of the Complaint.**

7.    The second thing Louks did to maliciously target Golars and its clients was to deny 100% of their claims on grounds that Golars failed to prove that its work was "reasonable and cost effective." Existing case law holds that when a consultant submits its invoices and work product, e.g., a site investigation report or a corrective action work plan, the consultant has established a prima facie case for payment from the ELTF. If the administrator denies the ELTF claim, they administrator is required to provide the claimant with a written explanation of all the reasons for the denial of reimbursement. IDEM rejected Golars' invoices and work product, including work for activities expressly made known to and approved by IDEM, in a completely arbitrary and capricious manner, depriving Golars and its clients of thousands of dollars for services performed over the past two years. This pre-approved work was important and necessary to investigate and/or remediate environmental contamination at UST-related sites, yet IDEM rejected Golars' claims.

**ANSWER:    Louks admits that (a) Ind. Code § 13-23-8-4(c) states that when an ELTF claim is denied, the Administrator shall "provide the claimant with a statement of the reasons for denial," (b) Ind. Code § 13-23-9-2(b) states that "[i]f the administrator denies an ELTF claim, the administrator shall provide the claimant with a written explanation of all reasons for the denial of reimbursement," and (c) some of Golars' claims for reimbursement from the ELTF have been denied. Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 7 of the Complaint with regard to the interpretation of existing case law and therefore denies the same. Louks denies all remaining allegations in Paragraph 7 of the Complaint.**

8.     The third thing Louks did to maliciously target Golars and its clients was to issue "No Further Action" orders and take other administrative actions, such as demanding that the clients agree to the recording of Environmental Restrictive Covenants ("ERCs") limiting their use of their own properties, and to immediately stop cleanups of sites where substantial contamination remains and where licensed professionals recommended that additional work be performed to protect people working at the properties and adjacent property owners and tenants. Gasoline contains many hazardous substances including benzene, which is a known human carcinogen. IDEM has strict regulations in place for remediating properties with benzene contamination in soil, groundwater, and vapor, including imposing a residential groundwater screening limit of 5 parts per billion ("ppb"). Louks has directed IDEM project managers to issue No Further Action orders on 30 sites owned by Golars' clients where the amount of known benzene groundwater contamination is greater than 1,000 ppb, with one site having more than 9,000 ppb of benzene contamination in groundwater, including significant benzene contamination at the border of an adjacent residential property. Many of these properties are in low income areas of Indiana. These improper No Further Action orders have effectively and substantially eliminated Golars and class members' ability to recover corrective action expenses from the ELTF.

**ANSWER:**    **Louks admits that (a) IDEM has issued "No Further Action" letters pertaining to sites owned by clients of Golars; (b) that IDEM has required land use restrictions in the form of an Environmental Restrictive Covenant as a condition of site closure; (c) that gasoline contains hazardous substances including benzene, which is a known human carcinogen; (d) that IDEM has issued No Further Action letters in situations where benzene contamination was to remain in place; and (e) that when a No Further Action letter has been issued, further corrective action at any property for which a No**

**Further Action letter has been issued is unnecessary.    Louks denies all remaining allegations of Paragraph 8 of the Complaint.**

9.    The fourth thing Louks did to maliciously target Golars and its clients was to delay the payment of claims for projects where IDEM claim reviewers have already decided that payment is owed. Under Indiana law, approved ELTF claims must be paid within 45 days. Golars and its clients have more than 30 claims totaling over $800,000 where IDEM has refused to comply with the law and issue timely payment.

**ANSWER:    Louks denies all of the allegations in Paragraph 9 of the Complaint.**

10.    Golars and its clients have exhausted their administrative remedies. And as a result of Louks' actions, IDEM's ELTF claim reviewers have applied tactics that Louks used to maliciously target Golars and its clients to other ELTF applicants and their environmental consultants. USSBOA, which represents more than 900 of Indiana's 1,400 independently owned and operated retail gas stations and convenience stores, has joined this lawsuit for itself and others similarly situated, to seek injunctive relief and damages against Louks and IDEM for their actions.

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint with regard to USSBOA's membership or its motives for joining this lawsuit, and therefore denies the same.  Louks denies all of the remaining allegations of Paragraph 10 of the Complaint.**

11.    As discussed further below, numerous defined classes have been harmed by the Defendants' conduct. As a result, Plaintiffs seek injunctive relief and to recover damages from IDEM's unlawful suspension of ELTF reimbursement payments; baseless and vindictive denials and delays of reimbursement claims; and violations of their rights to equal protection under the law. Golars, Daleenl, Sail, Warren, and USSBOA also seek damages for defamation,

commercial disparagement, fraudulent inducement, tortious interference with their contractual relationships, and tortious interference with their business relationships as a result of Louks and IDEM's actions described below.

**ANSWER:    Louks denies all of the allegations in Paragraph 11 of the Complaint.**

12.    This action is brought against DEM under the Indiana Tort Claims Act. This action is also brought against Louks personally pursuant to Ind. Code § 34-13-3-5 for his malicious, willful, and wanton actions that have caused losses to the plaintiffs, and against Louks under 42 U.S.C. § 1983 for retrospective relief (in his individual capacity) and future injunctive relief (in his official capacity as Deputy Assistant Commissioner of the OLQ that oversees the Fund). On behalf of themselves and the proposed classes defined below, Plaintiffs seek injunctive relief as well as an award of statutory damages to the class members and monetary damages to be determined at trial, together with costs and reasonable attorneys' fees.

**ANSWER:    Louks denies all of the allegations in Paragraph 12 of the Complaint.**

13.    Plaintiff Golars is an Indiana limited liability company located at 15755 North Point Blvd., Noblesville, IN 46060.

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 13 of the Complaint and therefore denies the same.**

14.    Plaintiff Daleenl in an Indiana corporation located at 6455 W. Washington St., Indianapolis, IN 46241. The owner during the relevant time period, Jayesh Patel, is an independent gas station owner of Indian origin. The remediation on Daleenl's site has been held up for a year. IDEM shut down the remediation system, stopped the cleanup, and demanded that

Daleenl agree to the filing of an ERC on the property. IDEM requested that Mr. Patel enter into an Agreed Order with IDEM in order to be eligible for reimbursement from the ELTF, but Mr. Patel refused. Mr. Patel was not able to refinance or sell the gas station due to the contamination on the site. In the end, he had to sell the property on a land contract because the buyer could not obtain a mortgage due to the contamination on the property. IDEM is now asking for a No Further Action order on the site even though there is over 1,370 ppb of benzene in the groundwater at the border of the property.

**ANSWER:    Louks admits that IDEM offered Daleen1 an opportunity to enter into an Agreed Order to be eligible for reimbursement from the ELTF per the Reimbursement Guidelines and that its representatives refused. Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint regarding Daleen1's address and ownership, Mr. Patel's finances, the sale of the property at issue, or the concentration of benzene in the groundwater at the property, and therefore denies the same. Louks denies all of the remaining allegations in Paragraph 14 of the Complaint.**

15.    Plaintiff Sail is an Indiana Limited Liability Company located at 3135 East Thompson Rd., Indianapolis, IN 46227. The owner during the relevant time period, Om Narla, is an independent gas station owner of Indian origin. The remediation on Sail's site has been held up for a year, and IDEM has now demanded that the remediation work be stopped permanently. IDEM stopped the cleanup and demanded that Sail agree to the filing of an ERC on the property. IDEM requested that Mr. Narla enter into an Agreed Order with IDEM in order to be eligible for reimbursement from the ELTF, but Mr. Narla refused. Mr. Narla has not been able to refinance or sell the gas station due to the contamination on site. IDEM is now asking for No Further

Action order for the site even though there is over 5,640 ppb of benzene in groundwater at the border of the property.

**ANSWER:    Louks admits that IDEM offered Sail an opportunity to enter into an Agreed Order to establish eligibility for ELTF reimbursement and that its representatives refused.  Louks lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 15 regarding Plaintiff Sail's address or ownership, Mr. Narla's finances, or the concentration of benzene in the groundwater at the border of the property. Louks denies all remaining allegations in Paragraph 15 of the Complaint.**

16.    Plaintiff Warren is an Indiana corporation located at 7270 S. Warren Rd., Warren, IN 46792. The owner during the relevant time period, Kulwinder Singh, is an independent gas station owner of Indian origin. The remediation on Warren's site has been held up for a year. IDEM has stopped the cleanup, and demanded that Warren agree to the filing of an ERC on the property. IDEM requested that Mr. Singh enter into an Agreed Order with IDEM in order to be eligible for reimbursement from the ELTF and he agreed. Mr. Singh was led to believe that entering into this Agreed Order would allow for full ELTF cost reimbursement and would not impact third party liability, neither of which was true. Mr. Singh has not been able to refinance or sell the gas station due to the contamination on site. IDEM has refused to allow the site to be remediated, and has instead recommended a strategy of leaving the contamination in place with monitoring even though the site has a groundwater concentration for benzene of 2,840 ppb.

**ANSWER:    Louks admits that IDEM offered Warren an opportunity to enter into an Agreed Order to be eligible for reimbursement from the ELTF per the Reimbursement Guidelines, and that IDEM determined that allowing contamination to remain in place with post-closure monitoring was appropriate. Louks lacks sufficient knowledge or**

**information to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint regarding Warren's address and ownership, Mr. Singh's finances, or the concentration of benzene in the groundwater at the property, and therefore denies the same. Louks denies all of the remaining allegations in Paragraph 16 of the Complaint.**

17.    Plaintiff USSBOA is an Indiana Limited Liability Company located at 15755 North Point Blvd, Noblesville, IN 46060. USSBOA advocates for the professional growth of gas station and convenience store owner-operators by focusing on three core principles: collaboration, education, and advocacy. It works to promote the entrepreneurial success of its members and economic development of their communities. Its members include over 900 of the 1,400 independently owned gas stations/convenience stores in Indiana. USSBOA brings this suit on behalf of its members. Its members would otherwise have standing in their own right having been harmed by the Defendants' actions. Its members includes Plaintiffs Daleen1, Sail, and Warren. The interests that USSBOA seeks are germane to the organization's purpose of promoting the entrepreneurial success of their members. Neither the claims asserted, nor the relief requested requires the participation of individual members in this lawsuit.

**<u>ANSWER:</u>    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 17 of the Complaint with regard to USSBOA's membership, its agenda, or its motives for bringing this lawsuit, and therefore denies the same. Louks denies all of the remaining allegations in Paragraph 17 of the Complaint.**

18.    Defendant IDEM is an Indiana governmental entity that is headquartered at Indiana Government Center North 100 North Senate Avenue, Indianapolis, IN 46204 and carries out its functions throughout the State of Indiana.

**ANSWER:    Louks admits the allegations in Paragraph 18 of the Complaint.**

19.    Defendant Louks at all relevant times has been a resident and citizen of the State of Indiana. At all relevant times, Defendant Louks was engaged in the complained of conduct while acting within the scope of his employment and under color of state law. Defendant Louks is sued in his individual capacity and as agent and/or employee of Defendant IDEM.

**ANSWER:    Louks admits that he is a lifelong resident and citizen of the State of Indiana and that all actions he has taken with regard to ELTF policies and the ELTF claims of the Plaintiffs—and those they purport to represent—were performed within the course and scope of his employment with IDEM. Louks denies that any of his conduct supports an action against him and further denies that he is liable to the Plaintiffs in any way.**

20.    IDEM is an agency of the State of Indiana and Louks, through his individual and official capacity at IDEM, has caused damage and violated Plaintiffs' rights through actions and omissions occurring in the State of Indiana. Therefore, this Court has jurisdiction over Defendants pursuant to Indiana Trial Rules 4.4(A)(1) and 4.4(A)(2).

**ANSWER:    Louks admits that IDEM is an agency of the State of Indiana and that, subject to Louks' affirmative defenses, the United States District Court for the Southern District of Indiana has jurisdiction over this matter. Louks denies all of the remaining allegations in Paragraph 20 of the Complaint.**

21.    Venue is proper because IDEM is a governmental organization with its principal office located within this county pursuant to Indiana Trial Rule 75(A)(5).

**ANSWER:    Louks admits that venue is proper in the United States District Court for the Southern District of Indiana. Louks denies all of the remaining allegations in Paragraph 21 of the Complaint.**

22.    This Court has jurisdiction to hear the case because Plaintiffs have fulfilled the requirements under the Indiana Tort Claims Act by providing a Tort Claims Notice to the Defendants.

**ANSWER:    Louks admits that, subject to the affirmative defenses stated below, the United States District Court for the Southern District of Indiana has jurisdiction to hear this case. Louks denies all of the remaining allegations in Paragraph 22 of the Complaint.**

23.    On May 14, 2019, the Tort Claims Notice was sent to the Office of the Attorney General, the Indiana Political Subdivision Risk Management Commission, and the Indiana Department of Environmental Management. *(See* Ex. 1.)

**ANSWER:    Louks denies the allegations in Exhibit 1 of the Complaint. Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 23 of the Complaint and therefore denies the same.**

24.    The Notice asked, among other things, for IDEM to declare the Policy invalid. *Id.* at 17.

**ANSWER:    Louks denies the allegations in Exhibit 1 to the Complaint. Louks admits that Exhibit 1 to the Complaint states: "[m]y clients seek to have IDEM:" … "formally rescind its ELTF Reimbursement Suspension Policy." Exhibit 1 speaks for itself.  Louks lacks sufficient knowledge or information to form a belief as to the truth of**

the remaining allegations in Paragraph 24 of the Complaint and therefore denies the same.

25.     A denial of this tort claim is a prerequisite to suit.

**ANSWER:**     **Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 25 of the Complaint and therefore denies the same.**

26.     To date, there has been no approval of Plaintiffs' tort claim.

**ANSWER:**     **Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 26 of the Complaint and therefore denies the same.**

27.     A tort claim is deemed denied if the government entity fails to approve the claim in its entirety within ninety days. IC § 34-13-3-11.

**ANSWER:**     **Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 27 of the Complaint and therefore denies the same.**

28.     Suit cannot be initiated against a governmental entity unless the claim has been denied in whole or in part. IC § 34-13-3-13.

**ANSWER:**     **Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 28 of the Complaint and therefore denies the same.**

29.     The Indiana Tort Claims Act "operates as an unequivocal statement of Indiana's consent to be sued in tort provided certain qualifications—including notice—are fulfilled." *Oshinski v. N. Ind. Commuter Transp. Dist.,* 843 N.E.2d 536, 544 (Ind. Ct. App. 2006).

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 29 of the Complaint and therefore denies the same.**

30.     Plaintiffs attempted to work with the Defendants to resolve their dispute without filing suit, but it was to no avail.

**ANSWER:    Louks denies that Plaintiffs attempted to work with him to resolve their dispute without filing suit and further denies that Plaintiffs exhausted their administrative remedies with regard to this dispute.  Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 30 of the Complaint and therefore denies the same.**

31.     Plaintiffs have fulfilled the necessary prerequisites under the Indiana Tort Claims Act in order to file suit.

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 31 of the Complaint and therefore denies the same.**

32.     Plaintiffs have exhausted their administrative remedies and are entitled to file suit.

**ANSWER:    Louks denies the allegations in Paragraph 32 of the Complaint.**

A.     The Excess Liability Trust Fund, which pays for the cost to clean up gasoline leaks from registered underground storage tanks, is supposed to operate in an open, transparent, and orderly manner.

**ANSWER:**    Louks admits that one of the purposes of the Excess Liability Trust Fund is to provide "a source of money to satisfy liabilities for corrective action." Ind. Code § 13-23-7-1(a)(2). Louks also admits that IDEM and the Underground Storage Tank Financial Assurance Board ("FAB") are subject to various Indiana laws pertaining to public meetings and public records, such as those found in Indiana Code § 5-14. Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph A of the Complaint and therefore denies the same.

33.    Many businesses, including gas stations, use USTs to store gasoline. Tanks made of steel can corrode and leak over time, and any tank and associated piping can impact the environment and affect Hoosiers if it is not properly installed, operated, and maintained. Leaking USTs and their associated piping can not only contaminate soil, surface water, and ground water, but can also release dangerous vapors into overhead buildings.

**ANSWER:**    Louks admits the allegations in Paragraph 33 of the Complaint.

34.    Benzene, Toluene, Ethylbenzene and Xylenes (collectively known as BTEX) are constituent chemicals found mainly in petroleum products such as gasoline.

**ANSWER:**    Louks admits that benzene, toluene, ethylbenzene, and xylene are commonly known as BTEX and are commonly found in petroleum products such as gasoline. Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 34 of the Complaint and therefore denies the same.

35.    Large amounts of BTEX can enter into the environment from leaking USTs, overfills of storage tanks, fuel spills from auto accidents, and from landfills.

**ANSWER:    Louks admits that BTEX can enter the environment as a result of a release of petroleum products. Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 35 of the Complaint and therefore denies the same.**

36.    BTEX compounds easily move through soils and can make their way into the groundwater, contaminating public and private sewer and water systems, and the soils.

**ANSWER:    Louks admits that under some circumstances, BTEX can move through soils, contaminate groundwater, and enter sewer systems. Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 36 of the Complaint and therefore denies the same.**

37.    The USEPA has classified benzene as a known human carcinogen for all routes of exposure. (Ex. 2.)

**ANSWER:    Louks admits the allegations in Paragraph 37 of the Complaint.**

38.    Acute (short-term) inhalation exposure of benzene in humans may cause drowsiness, dizziness, headaches, as well as eye, skin, and respiratory tract irritation, and, at high levels, unconsciousness. *Id.*

**ANSWER:    While Louks lacks sufficient knowledge, information, or technical expertise to form an opinion as to the accuracy of the allegations in Paragraph 38 of the Complaint, Louks admits that the above statement is contained in Exhibit 2.**

39.    Chronic (long-term) inhalation exposure of benzene in humans has caused various disorders in the blood, including reduced numbers of red blood cells and aplastic anemia, in occupational settings. *Id.*

**ANSWER:**    While Louks lacks sufficient knowledge, information, or technical expertise to form an opinion as to the accuracy of the allegations in Paragraph 39 of the Complaint, Louks admits that the above statement is contained in Exhibit 2.

40.    Reproductive effects have been reported for women exposed by inhalation of benzene, and adverse effects on the developing fetus have been observed in animal tests. *Id.*

**ANSWER:**    While Louks lacks sufficient knowledge, information, or technical expertise to form an opinion as to the accuracy of the allegations in Paragraph 40 of the Complaint, Louks admits that the above statement is contained in Exhibit 2.

41.    Increased incidence of leukemia have been observed in humans occupationally exposed to benzene. *Id.*

**ANSWER:**    While Louks lacks sufficient knowledge, information, or technical expertise to form an opinion as to the accuracy of the allegations in Paragraph 41 of the Complaint, Louks admits that the above statement is contained in Exhibit 2.

42.    Benzene is a volatile organic compound that can generate vapors.

**ANSWER:**    Louks admits that Benzene is a volatile organic compound. Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 42 of the Complaint and therefore denies the same.

43.    Vapor intrusion occurs when sub-slab contaminants enter into overhead buildings.

**ANSWER:**    Louks admits that vapor intrusion is a process by which chemical vapors from contaminated soil or groundwater affect indoor air quality in a building. Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 43 of the Complaint and therefore denies the same.

44.    Vapor intrusion can result in building residents being exposed to dangerous levels of contaminants. *(See* https://www.in.gov/idem/cleanups/2357.htm and https://www.epa.gov/vaporintrusion/what-vapor-intrusion.)

**ANSWER:    Louks admits the allegations in Paragraph 44 of the Complaint.**

45.    The United States Environmental Protection Agency ("USEPA") has established 5 ppb as the Maximum Contaminant Level ("MCL") for benzene in groundwater.

**ANSWER:    Louks admits that the United States Environmental Protection Agency ("USEPA") has established a Maximum Contaminant Level ("MCL") for benzene at 5 mg/L as part of its National Primary Drinking Water Regulations. Louks denies all of the remaining allegations in Paragraph 45 of the Complaint.**

46.    Federal and state regulations for USTs promote the safe storage and handling of these products. The IDEM OLQ enforces Indiana's UST regulations, and is supposed to ensure adequate cleanup of contamination from leaks and spills. *See* https://www.in.gov/idem/tanks/.

**ANSWER:    Louks admits that, at or around the time of his Answer, the above-referenced website states: (a) "[f]ederal and state regulations for underground storage tanks (USTs) … promote the safe storage and handling of flammable and combustible liquids to minimize the possibility of releases and to reduce fire hazards" and (b) "OLQ also enforces Indiana's UST regulations, and ensures adequate cleanup of contamination from leaks and spills." Louks denies all remaining allegations in Paragraph 46 of the Complaint.**

47.    IDEM, through the OLQ, manages ELTF. ELTF is a dedicated state trust fund that serves, in part, as a financial responsibility mechanism for owners and operators of regulated USTs, to satisfy liabilities for corrective actions, and to provide a source of money for the

indemnification of third party claims. IC § 13-23-7-1(a). ETLF is funded, in part, by fees collected from owners and operators of registered USTs.

**ANSWER:    Louks admits the allegations in Paragraph 47 of the Complaint.**

48.    The owner or operator of an UST is liable to the state for the actual costs of any corrective action from a leaking UST. IC § 13-23-13-8(a). And, IC § 13-23-13-8(b) provides, in relevant part, that a person who "(1) pays to the state the costs described under subsection (a); or (2) undertakes corrective action resulting from a release from an UST, regardless of whether the corrective action is undertaken voluntarily or under an order issued is entitled to receive a contribution from the person who owned or operated the UST at the time the release occurred."

**ANSWER:    Louks states that IC § 13-23-13-8 contains the complete terms of the statute but denies that Paragraph 48 contains a full and complete recitation of IC § 13-23-13-8. Louks denies all remaining allegations of Paragraph 48 of the Complaint.**

49.    The ELTF program provides a mechanism for the cost reimbursement of emergency measures, investigations, corrective actions, and ELTF indemnity claims resulting from eligible releases from USTs. Eligible parties and persons assigned the right of reimbursement by an eligible party may apply to IDEM to receive cost reimbursements from ELTF.

**ANSWER:    Louks admits that, as more fully outlined in applicable laws and regulations, including Ind. Code §§ 13-23-8-4(b) and 13-23-9-1.5, (a) the ELTF Administrator may pay ELTF claims for, among other things, costs that result from site characterization, the development and implementation of a corrective action plan that is approved by the IDEM Commissioner, and emergency responses and (b) an eligible party may assign the right to receive payment of an ELTF claim to another person. Louks denies all remaining allegations of Paragraph 49 of the Complaint.**

20

50.    The OLQ is supposed to manage ELTF in accordance with Indiana statutes and regulations promulgated by the Underground Storage Tank Financial Assurance Board at 328 IAC 1.

**ANSWER:**    **Louks admits the allegations in Paragraph 50 of the Complaint.**

51.    Over the past 28 years, ELTF has promulgated regulations governing what expenses the Fund covers, the types and number of claims for corrective actions that may be paid from the Fund, and eligibility requirements. Originally, the regulations granted access to the Fund to only tank owners or operators. However, subsequent regulations granted access to the Fund to property owners and environmental consultants who were assigned the right to access the Fund by eligible tank owners or operators. 328 IAC 1-3-1 (1992). This was important because at many sites, corrective action is still required even if the tanks have been closed or removed.

**ANSWER:**    **Louks admits that 328 IAC 1-3-1 states that "[f]und access is limited to eligible parties and those assigned the right of fund access by an eligible party." Louks denies that the ELTF has promulgated regulations. Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 51 of the Complaint and therefore denies the same.**

52.    ELTF has a regimented process and requirements that corrective actions be cost effective (328 IAC 1-3-1.3); provide for prioritization of claims (328 IAC 1-4-1); and is supposed to provide complete fairness and transparency in the processing, review, and payment of claims, e.g. 328 IAC 1-2-3 ["claims shall be paid in the order received..."]; 328 IAC 1-4-1(c)(6) ["Claims in the same category will be paid in chronological order according to the date and time received by the administrator as indicated by the date and time stamped by the administrator on the claim submitted to the administrator."]; and 328 IAC 1-4-1(e) ["Claims determined to be unreimbursable may be

revised and resubmitted to the fund. The date and time of the revised claim for the purposes of subsection (c)(6) shall be based on the date and time that the fund administrator received the revised claim as indicated by the date and time stamped by the administrator on the claim submitted to the administrator."].

**ANSWER:   Louks admits that regulations applicable to ELTF claims may be found in the sections of the Indiana Administrative Code cited in Paragraph 52 of the Complaint, and states that those rules speak for themselves. Louks denies all of the remaining allegations in Paragraph 52 of the Complaint.**

53.    At all relevant times of this action, under IC § 13-23-4-4(a), the OLQ, as the administrator of ELTF, was required to pay claims that are: (1) for costs related to eligible releases; (2) submitted by eligible parties; and (3) submitted in accordance with IC § 13-23-8 and IC § 1323-9. For purposes of IC § 13-23, an "eligible" party means:

        a.    an owner, as defined in IC § 13-11-2-150;

        b.    an operator, as defined in IC § 13-11-2-148(d) and IC § 13-11-2-148(e);

        c.    a former owner or operator of an UST;

        d.    a transferee of property upon which an UST is located; and

        e.    a transferee of property upon which an UST was located but from which the UST has been removed.

IC § 13-11-2-62.5.

**ANSWER:   Louks admits that statutes applicable to ELTF claims may be found in provisions of the Indiana Code sections cited in Paragraph 53 of the Complaint, and states that those code provisions speak for themselves. Louks denies all of the remaining allegations in Paragraph 53 of the Complaint.**

54.    For purposes of ELTF reimbursement, an eligible party may assign the right to receive payment of an ELTF claim to another person ("Assignee"). IC § 13-23-8-4(b). The regulations state that "Fund access [to ELTF reimbursement] is limited to eligible parties and those assigned the right of fund access by an eligible party." 328 IAC 1-3-1(a). In other words, eligible parties and persons assigned the right to reimbursement by an eligible party, such as environmental consultants, may apply to IDEM to receive cost reimbursements from ELTF to pay for corrective actions resulting from leaking USTs. The intent of Indiana's UST and ELTF statutes is to encourage remediation of petroleum-contaminated sites.

**ANSWER:    Louks admits that Ind. Code § 13-23-8-4(b) provides that "[a]n eligible party may assign the right to receive payment of an ELTF claim to another person" and that that 328 IAC 1-3-1 provides that "[f]und access is limited to eligible parties and those assigned the right of fund access by an eligible party." Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 54 of the Complaint regarding the intent of the Indiana legislature when it enacted statutes pertaining to USTs and the ELTF and Louks therefore denies the same. Louks denies all of the remaining allegations in Paragraph 54 of the Complaint.**

55.    Under ELTF, eligible parties and Assignees may seek reimbursement for their cleanup costs up to the ELTF cap of $2,500,000 per site. Eligible parties are required to pay a deductible (an amount that varies based on a number of factors) and are then eligible for reimbursement of their corrective action costs up to the $2,500,000 cap.

**ANSWER:    Louks admits that (a) Ind. Code § 13-23-8-8 states that "[t]he administrator of the ELTF: (1) shall not pay more than two million five hundred thousand dollars ($2,500,000) from the ELTF per eligible release" and (b) Ind. Code § 13-23-9-1.3**

provides for various reductions of the total amount otherwise available from the ELTF, including a $15,000 deductible amount. **Louks denies all remaining allegations of Paragraph 55 of the Complaint.**

56.    Under ELTF, current property owners, including owners of sites from which leaking UST systems had been removed, are eligible for reimbursement of their cleanup costs without the current property owner having any personal liability for the corrective action.

**ANSWER:    Louks admits that in *In the matter of Objection to the Notice of Excess Liability Trust Fund Reimbursement Suspension, ELTF #199609531 / FID #12211, Former Phillips 66 Station No. 27300, Daleen1, Inc.*, the Office of Environmental Adjudication held that "I.C. § 13-23-7-1 does not impose an additional requirement of liability" upon otherwise eligible ELTF claimants to receive reimbursement. Louks denies all remaining allegations in Paragraph 56 of the Complaint.**

57.    During the 2016 session of the Indiana General Assembly, the Indiana legislature amended the ELTF program through Senate Bill 255, enacted as Public Law 96-2016, with the intended goals, in part, of expanding eligibility criteria and increasing the maximum amount of ELTF payments.

**ANSWER:    Louks admits that in 2016, the Indiana General Assembly enacted Public Law 96-2016, which included amendments to certain Indiana Code provisions related to the ELTF and ELTF claims. Public Law 96-2016 speaks for itself. Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 57 of the Complaint and therefore denies the same.**

58.    According to IDEM, "Public Law 96-2016 amended ELTF statutory definitions in IC § 13-11-2 and ELTF eligibility, claim, and administrative requirements in IC § 13-23 with the

goals of expanding eligibility criteria, increasing the maximum amount of ELTF payments, and improving the overall administration of the ELTF program." (Excess Liability Trust Fund, Second Notice of Comment Period, LSA Doc. No. 15-231, a copy of which is attached as Ex. 3.)

**ANSWER:    Louks admits that the above-quoted statements appear in Exhibit 3 to the Complaint. Louks denies all of the remaining allegations in Paragraph 58 of the Complaint.**

59.    After enactment of P.L. 96-2016, IDEM then proposed modifying its rules to have "[c]hanges to the requirements for access to ELTF and payment of ELTF claims, which will allow more eligible parties and eligible releases to apply for payment from ELTF." *Id.* (discussing the basic purpose and background of the proposed rulemaking)

**ANSWER:    Louks admits that the above-quoted statements appear in Exhibit 3 to the Complaint.  Louks denies all of the remaining allegations in Paragraph 59 of the Complaint.**

60.    However, in early to mid-2018, IDEM, acting at the direction of Louks, who was then the IDEM Branch Chief for the Underground Storage Tank Branch of OLQ, began to unlawfully withhold Fund access to eligible parties and Assignees.

**ANSWER:    Louks denies all allegations in Paragraph 60 of the Complaint.**

B.    Louks maliciously targeted Golars by claiming that its clients (new Americans of Indian descent) were not eligible for ELTF reimbursement unless they signed Agreed Orders to be personally liable for the cleanup costs (contrary to existing law), including all costs in excess of the Fund's $2,500,000 cap per site.

**ANSWER:    Louks denies all allegations in Paragraph B of the Complaint.**

61.    In early 2018, Louks began to maliciously target Golars by twisting existing law to unlawfully cut off ELTF claims from Golars' clientele, who are primarily new Americans of

Indian descent. Louks unilaterally redefined the qualifications for Fund reimbursement and claimed that Golars' clientele did not qualify.

**ANSWER:    Louks denies all allegations in Paragraph 61 of the Complaint.**

62.    Justin Barrett, then Golars' Deputy General Counsel (and former IDEM lawyer), objected to Louks' actions for failure to follow the proper rulemaking process.

**ANSWER:    Louks admits that (a) Justin Barrett was Golars' Deputy General Counsel and (b) Mr. Barrett expressed disagreement with some of IDEM's policy decisions pertaining to the ELTF. Louks denies all of the remaining allegations in Paragraph 62 of the Complaint.**

63.    In response, Louks published what became known as IDEM's "ELTF Reimbursement Suspension Policy" (the "Policy") to the IDEM OLQ ELTF announcements page. *See* https://www.in.gov/idem/tanks/2349.htm, last visited April 29, 2020. (A copy of the ELTF Reimbursement Suspension Policy is attached as Ex. 4.)

**ANSWER:    Louks admits that the Reimbursement Guidelines were published on IDEM's website, and that Exhibit 4 to the Complaint is a copy of that document.  Louks denies all remaining allegations in Paragraph 63 of the Complaint.**

64.    IDEM, acting by and through Louks, began to fraudulently induce parties to enter into Agreed Orders under the Policy by stating that they had to do so under existing law.

**ANSWER:    Louks denies all allegations in Paragraph 64 of the Complaint.**

65.    The Policy states that "a Party applying for ELTF reimbursement must be the [Responsible Party or "RP"] *or* someone assigned the rights to ELTF reimbursement from an RP." *Id* at 4. This was not true because Indiana Code § 13-11-2-62.5 (4) and (5) defines an "eligible party" permitted access to the ELTF as "a transferee of property upon which a UST is

located," and "a transferee of property upon which a UST was located from which the UST has been removed." There is no statutory obligation that a responsible party must assign its rights to ELTF reimbursement to a transferee under IC 13-11-2-62.5 (4) and (5) to be entitled to reimbursement. *(See* <u>Exs. 5 & 6</u>.)

**ANSWER:    Louks admits that (a) the Reimbursement Guidelines state that "[i]n the absence of a legally binding document, enforceable by IDEM, involving an assumption of corrective action liability (see below), a Party applying for ELTF reimbursement must be the RP *or* someone assigned the rights to ELTF reimbursement *from* an RP," (b) Ind. Code § 13-11-2-62.5(4) defines "eligible party," as the term is used in Ind. Code § 13-23, as "[a] transferee of property upon which a UST is located," and (c) Ind. Code § 13-11-2-62.5(5) defines "eligible party," as the term is used in Ind. Code § 13-23, as "[a] transferee of property upon which a UST was located but from which the UST has been removed." Louks denies all of the remaining allegations in Paragraph 65 of the Complaint.**

66.    IDEM, acting by and through Louks, sought to undermine the legislature's intent as expressed in Public Law 96-2016 and the effect of IDEM's new rules as expressed in LSA Document # 15-231, attached as Ex. 3, in order to reduce the number of eligible parties, curtail the amounts of ELTF payments, and in particular drive Golars out of business.

**ANSWER:    Louks denies all allegations in Paragraph 66 of the Complaint.**

67.    Under the pretense of wanting "[t]o ensure that IDEM is communicating with and reimbursing the appropriate parties," IDEM began unilaterally to impose new standards on ELTF eligibility that undermined Indiana law and IDEM's previously stated intentions. IDEM through

Louks unilaterally changed the rules on ELTF eligibility and communicated those changes through the June 2018 letter attached as Ex. 3.

**ANSWER:    Louks admits that the above-quoted passage is contained in the Reimbursement Guidelines.  Louks denies all of the remaining allegations in Paragraph 67 of the Complaint.**

68.    To reach his misguided and unlawful goals, Louks decided to purposely misinterpret the clear and unmistakable words in the legal definition of an "eligible party." Louks, acting under IDEM's authority, wrote:

> The rule for ELTF access (328 IAC 1-3-1) and "eligible party" definition (IC 13-11-2-62.5) identify the parties IDEM *could possibly* reimburse; **not** the parties that will appropriately be reimbursed in every circumstance.

(Ex. 3, p. 4) (Italics and bold in original).

**ANSWER:    Louks admits that he signed the cover letter to the Reimbursement Guidelines, and that the above-quoted passage is contained in the Reimbursement Guidelines.  Louks denies all of the remaining allegations in Paragraph 68 of the Complaint.**

69.    For properties that once had USTs but the tanks had been removed, Louks demanded that subsequent property owners enter into an Agreed Order with IDEM, in which they assumed personal liability, to be eligible for cost reimbursement from ELTF, even though no such orders are required under IC § 13-11-2-62.5, or its preceding statutes, or 328 IAC 1-3-1(a).

**ANSWER:    Louks admits that once the Reimbursement Guidelines were issued, he enforced them, including the provisions regarding the assumption of corrective action**

**liability by a non-responsible party. Louks denies all of the remaining allegations in Paragraph 69 of the Complaint.**

70.    Louks knew that this was not a proper reading of the law and said as much in an email prior to drafting the Policy. (Ex. 7.) Louks stated in the email to a prior owner of an UST that IDEM did not have the authority to demand that the current property owner perform a cleanup because the current owner does not have liability for corrective actions. Louks also stated that the only way the current owner could be liable is if they assumed liability under an Agreed Order with IDEM. *Id.*

**ANSWER:    Louks admits that Exhibit 7 is a copy of an email exchange in which he was involved, and the exhibit speaks for itself. Louks denies all of the remaining allegations in Paragraph 70 of the Complaint.**

71.    IDEM and Louks fraudulently induced parties to enter into these Agreed Orders by promising them that, once they signed an Agreed Order, all costs and claims submitted for ELTF reimbursement would be processed in accordance with applicable rules and guidance. (Ex. 8). However, even after entering into Agreed Orders, IDEM continued to improperly deny the parties' ELTF claims in violation of the applicable rules and guidance.

**ANSWER:    Louks denies all of the allegations in Paragraph 71 of the Complaint.**

72.    IDEM and Louks fraudulently induced parties to enter into Agreed Orders under the Policy by promising that "An assumption of corrective action liability by a party does not impact third party liability; the RP retains third party liability even after another party assumes corrective action responsibility." (Ex. 4 at 5.) In truth, the Agreed Orders are silent on this point meaning that it offers parties entering into Agreed Orders under the Policy no protection from third party liability claims.

**ANSWER:**    Louks admits that the above-quoted passage is contained in the Reimbursement Guidelines.  Louks denies all of the remaining allegations in Paragraph 72 of the Complaint.

73.    IDEM and Louks also fraudulently induced parties to enter into the Agreed Orders under the Policy by promising that "Unless also an RP, a party with potential liability for corrective action is no longer liable for corrective action once a transaction affecting ownership or operation occurs." *Id.* In truth, the Agreed Orders state that "No transfer of any ownership interest in the Site, or any UST which may remain at the Site, shall affect the liability assumed by the Respondent herein. Respondent retains the liability assumed herein even after transfer of any such ownership interest." (Ex. 8, p. 2, ¶ IL) So while a party may have thought they would no longer have liability for the corrective action if they sold the property under the Policy, the Agreed Order holds them liable along with their "officers, directors, successors, assigns, trustees, and receivers," and regardless if there is a change "in owner, operator, corporate, or partnership status" of the party. (Ex. 8, p. 2, ¶ 10.)

**ANSWER:**    Louks admits that that (a) the quoted passage in the first sentence of Paragraph 73 is contained in the Reimbursement Guidelines and (b) the quoted passages in the second and third sentences of Paragraph 73 are contained in the "Agreed Order" attached as Exhibit 8 to the Complaint. Louks denies all of the remaining allegations in Paragraph 73 of the Complaint.

74.    Eligible parties such as subsequent property owners or Assignees typically have no personal liability for corrective actions needed to address petroleum release from USTs

under Indiana law. Such liability stays with the owner or operator of the USTs at the time that the release occurred.

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 74 of the Complaint and therefore denies the same.**

75.    Louks not only demanded, as a condition of Fund reimbursement, that subsequent property owners (who otherwise had no liability) enter into Agreed Orders in which they accepted personal liability for corrective actions, but added insult to injury by requiring the owners to agree to be personally liable *above* the ELTF cap limit of $2.5 million for the cost of the corrective action.

**ANSWER:    Louks admits that once the Reimbursement Guidelines were issued, he enforced them, including the provisions regarding the assumption of corrective action liability by a non-responsible party. Louks denies all remaining allegations of Paragraph 75 of the Complaint.**

76.    IDEM fraudulently induced parties to enter into Agreed Orders by failing to state in the Policy that parties entering into the Agreed Orders would bear liability for all corrective action costs exceeding the ELTF cap until DEM decides to issue a No Further Action order. Although the Policy is silent on this point, the Agreed Orders under the Policy state "Respondent further understands that the corrective action liability it is assuming is not limited by the availability of ELTF funding." (Ex. 8, p. 2, 7.) This means that not only is the party entering into the Agreed Order subject to all liability for corrective action costs above the $2.5 million cap, but IDEM retains the discretion to decide when the corrective action activities are complete and No Further Action is needed.

**ANSWER:    Louks admits that the quoted passage is contained in the "Agreed Order" attached as Exhibit 8 to the Complaint. Louks denies all remaining allegations in Paragraph 76 of the Complaint.**

77.    Once IDEM implemented the Policy, subsequent property owners either refused to assume liability through Agreed Orders (whereupon their claims were denied) or signed the unlawful Agreed Orders under fear and compulsion of, among other things, IDEM's refusal to pay for the cost of the corrective actions and facing potential third party personal injury and property damage claims.

**ANSWER:    Louks admits that some property owners who were not responsible parties declined to enter into Agreed Orders with IDEM under the Reimbursement Guidelines and that, as a result, their claims for reimbursement were denied. Louks denies all of the remaining allegations in Paragraph 77 of the Complaint.**

78.    IDEM and Louks' intent under the Policy was to unlawfully impose personal liability on a transferee for the remaining corrective action until IDEM determined that the corrective action was completed, even if the total costs of the corrective action exceeded the amount of reimbursable costs subject to the ELTF cap of $2.5 million.

**ANSWER:    Louks denies all allegations in Paragraph 78 of the Complaint.**

79.    Owners who purchase contaminated property can, under certain circumstances, avoid liability as a bona fide prospective purchaser ("BFPP"). 42 U.S.C. § 9601.

**ANSWER:    Louks admits all allegations in Paragraph 79 of the Complaint.**

80.    Through the Policy, Louks and IDEM's policy undercut a purchaser's ability to assert the BFPP defense to liability for the release.

**ANSWER:    Louks denies all allegations in Paragraph 80 of the Complaint.**

81.    In February 2019, IDEM's OEA rejected IDEM' s unfounded and unlawful Policy adopted by Louks. *(See* Ex. 5.)

**ANSWER:    Louks admits that in *In the matter of Objection to the Notice of Excess Liability Trust Fund Reimbursement Suspension, ELTF #199609531 / FID #12211, Former Phillips 66 Station No. 27300, Daleen1, Inc.*, the Office of Environmental Adjudication held that "I.C. §13-23-7-1 does not impose an additional requirement of liability" upon otherwise eligible ELTF claimants to receive reimbursement. Louks denies all of the remaining allegations in Paragraph 81 of the Complaint.**

82.    Daleenl challenged IDEM's denial of reimbursements for eligible costs in the OEA case captioned *In the Matter of Objection to the Notice of Excess Liability Trust Fund Reimbursement Suspension, ELTF #199609531/FID # 12211, Former Phillips 66 Station No. 27300, Daleenl, Inc.,* Cause No. 18-F-J-4996.

**ANSWER:    Louks admits that Daleen1 was the Petitioner in *In the matter of Objection to the Notice of Excess Liability Trust Fund Reimbursement Suspension, ELTF #199609531 / FID #12211, Former Phillips 66 Station No. 27300, Daleen1, Inc.*  Louks denies all of the remaining allegations in Paragraph 82 of the Complaint.**

83.    There, IDEM denied Daleenl's request for reimbursement for corrective action costs even though Daleenl's environmental consultant (Golars) presented IDEM a proposed work scope outlining the work to be performed as reasonable and necessary; IDEM had previously reviewed and expressly approved the work to be performed finding it reasonable and necessary; and the environmental consultant performed the work relying on IDEM's approval and expectation of reimbursement.

**ANSWER:**    Louks admits that in *In the matter of Objection to the Notice of Excess Liability Trust Fund Reimbursement Suspension, ELTF #199609531 / FID #12211, Former Phillips 66 Station No. 27300, Daleen1, Inc.*, **IDEM had denied certain ELTF claims submitted by Daleen1. Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 83 of the Complaint regarding Golars' reliance upon previous IDEM determinations and therefore denies the same. Louks denies all of the remaining allegations of Paragraph 83 of the Complaint.**

84.    After the work was performed, IDEM refused to reimburse the costs for the work that had been performed, pursuant to the Policy, because Daleenl refused to sign IDEM's proposed Agreed Order.

**ANSWER:**    Louks admits that in *In the matter of Objection to the Notice of Excess Liability Trust Fund Reimbursement Suspension, ELTF #199609531 / FID #12211, Former Phillips 66 Station No. 27300, Daleen1, Inc.*, **IDEM denied certain ELTF claims submitted by Daleen1 unless Daleen1 entered into an agreement assuming liability for the corrective action, per the provisions of the Reimbursement Guidelines. Louks denies all of the remaining allegations of Paragraph 84 of the Complaint.**

85.    IDEM's proposed Agreed Order would have required Daleenl, who was otherwise not responsible for the corrective action costs, to be personally and individually liable for the entire costs of the corrective action, even if those costs exceeded the statutory cap of the ELTF.

**ANSWER:**    Louks admits that in *In the matter of Objection to the Notice of Excess Liability Trust Fund Reimbursement Suspension, ELTF #199609531 / FID #12211, Former Phillips 66 Station No. 27300, Daleen1, Inc.*, **IDEM denied certain ELTF claims submitted by Daleen1 unless it entered into an Agreed Order as described in the Reimbursement**

Guidelines. **Louks denies all of the remaining allegations of Paragraph 85 of the Complaint.**

86.    On January 20, 2019, the Indiana Attorney General issued an opinion stating that nothing in the statutes or rules promulgated by IDEM narrowed the application of access to the ELTF to fewer than those listed in the statute, including a transferee of property and those assigned the right to receive payment under the ELTF from an eligible party. (Ex. 5, ¶ 14, citing Ex. 6.) IDEM's and Louks' Policy is inconsistent, and cannot be reconciled, with the Attorney General's opinion.

**ANSWER:    Louks admits Indiana Attorney General Curtis T. Hill, Jr. issued an opinion on January 20, 2019, a copy of which is attached to the Complaint as Exhibit 6, and states that the opinion speaks for itself.  Louks denies all of the remaining allegations in Paragraph 86 of the Complaint.**

87.    On February 27, 2019, OEA issued its Findings of Fact, Conclusions of Law and Final Order ("Daleenl Order"), attached as Ex. 5.

**ANSWER:    Louks admits that the Office of Environmental Adjudication issued its Findings of Fact, Conclusions of Law, and Final Order in *In the matter of Objection to the Notice of Excess Liability Trust Fund Reimbursement Suspension, ELTF #199609531 / FID #12211, Former Phillips 66 Station No. 27300, Daleen1, Inc.* on February 27, 2019, a copy of which is attached as Exhibit 5 to the Complaint. Louks denies all of the remaining allegations in Paragraph 87 of the Complaint.**

88.    In the Daleenl Order, OEA stated that "IDEM does not have the legal authority to impose conditions upon eligibility that are not spelled out in the applicable statutes, even if, in IDEM's view, those conditions constitute good public policy." (Ex. 5, ¶ 20.)

**ANSWER:    Louks admits that Exhibit 5 contains the quoted passage. Louks denies all of the remaining allegations in Paragraph 88 of the Complaint.**

89.    Further, in the Daleenl Order, OEA stated:

Applying the rules of statutory construction, the definition of eligible party is clear. Daleenl is an eligible party and is not required to be liable in order to receive reimbursement. Any other interpretation would render the language of [IC § 13-2-11-62.5] meaningless. Further, IDEM's interpretation is not entitled to any significant weight as (1) it is a relatively recent interpretation and (2) is not found in any regulation or nonrule policy document. 328 IAC 1-3-1(a) bolsters this conclusion. In addition, while not binding, the Attorney General's opinion is consistent with this decision and reinforces the conclusion that I.C. § 13-23-7-1 does not impose an additional requirement of liability. While IDEM's goals have merit, this Office must interpret the statutes as written.

(Ex. 8, ¶ 21.)

**ANSWER:    Louks admits that Exhibit 5 contains the quoted passage. Louks denies all of the remaining allegations in Paragraph 89 of the Complaint.**

90.    IDEM chose not to ask the Office of the Attorney General to seek judicial review of the Daleenl Order and is now bound by the OEA Daleenl Order.

**ANSWER:    Louks admits that (a) IDEM did not seek judicial review of OEA's decision in *In the matter of Objection to the Notice of Excess Liability Trust Fund Reimbursement Suspension, ELTF #199609531 / FID #12211, Former Phillips 66 Station No. 27300, Daleen1, Inc.* and (b) IDEM is bound by the decision with regard to the reimbursements claims of Daleen1 that were at issue in that case. Louks denies all of the remaining allegations in Paragraph 90 of the Complaint.**

91.    In Plaintiffs' Notice of Tort Claim, Plaintiffs formally requested IDEM to rescind its Policy. (Ex. 1, p. 17.)

**ANSWER:    Louks admits that Ex. 1 states "[m]y clients seek to have IDEM: formally rescind its ELTF Reimbursement Suspension Policy." Louks denies all of the remaining allegations in Paragraph 91 of the Complaint.**

92.    Despite the OEA's Daleenl Order finding that the Policy was unlawful, IDEM has refused to rescind the Policy.

**ANSWER:    Louks denies the allegations in Paragraph 92 of the Complaint.**

93.    To date, IDEM has not rescinded its Policy, which is still available on its website. *(See* https://www.in.gov/idem/tanks/files/eltf_announcement_20180604.pdf, last reviewed on April 29, 2020.)

**ANSWER:    Louks admits that the Reimbursement Guidelines have not been removed from IDEM's website. Louks denies all remaining allegations in Paragraph 93 of the Complaint.**

94.    To date, IDEM has taken no action to rescind any of the Agreed Orders entered into by eligible parties as a result of the Policy.

**ANSWER:    Louks admits the allegations in Paragraph 94 of the Complaint.**

C.    Louks maliciously targeted Golars by denying 100% of more than 40 claims on the grounds that Golars failed to demonstrate that its work was "reasonable and cost effective," even though IDEM had a long history of reimbursing close to 100% of all of Golars' claims before Louks became UST Branch Chief; Golars submitted its work plans to IDEM, which approved the proposed work as reasonable and necessary; and Golars performed the work according to the pre-approved plans, the work was reasonable and cost effective, and Golars performed the work on the expectation of reimbursement.

**ANSWER:    Louks admits that IDEM denied several of Golars' claims when Louks was Branch Chief of the Underground Storage Tank Branch. Louks denies all remaining allegations in Paragraph C of the Complaint.**

95.     Before Louks became the UST Branch Chief, IDEM for many years regularly reimbursed close to 100% of Golars' ELTF claims finding that the work was preapproved, was performed correctly, and was "reasonable and cost effective."

**ANSWER:     Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 95 of the Complaint and therefore denies the same.**

96.     Around the same time of IDEM's adoption of the Policy, Louks directed ELTF claim reviewers to deny 100% of Golars' claims for more than 40 claims where IDEM had previously reviewed and approved Golars' proposed work plans, Golars performed the work according to the plans, the work was reasonable and cost effective, and Golars had a reasonable expectation of reimbursement.

**ANSWER:     Louks denies all of the allegations in Paragraph 96 of the Complaint.**

97.     After Golars' CEO was recognized by the IBJ in 2018 as an up and coming business professional, Louks began to target Golars to deny its claims and put it out of business in regards to ELTF claims.

**ANSWER:     Louks denies all of the allegations in Paragraph 97 of the Complaint.**

98.     Upon information and belief, Louks directed ELTF claim reviewers to deny all of Golars' claims for 100% of the amounts claimed under the feigned basis that Golars failed to prove that the work was "reasonable and cost effective," a practice that IDEM had never imposed on Golars and did not impose on other environmental consultants' claims at the time.

**ANSWER:     Louks denies all of the allegations in Paragraph 98 of the Complaint.**

99.    Barrett again objected, expressing to Louks that IDEM had never defined what constitutes "reasonable" or "cost effective" activities, so that Louks' actions were arbitrary and capricious. Louks ignored this and continued to maliciously target Golars' reimbursement claims.

**ANSWER:    Louks admits that Barrett expressed concerns about IDEM's denials of certain ELTF claims submitted by Golars.  Louks denies all of the remaining allegations in Paragraph 99 of the Complaint.**

100.    By law, IDEM is required to provide specific reasons for the denial of reimbursement claims, especially after an environmental consultant submits its work product and invoices detailed the cost for such work product.

**ANSWER:    Louks admits that Ind. Code § 13-23-8-4(c)(3) states that when an ELTF claim is denied, the Administrator shall "provide the claimant with a statement of the reasons for denial" and Ind. Code § 13-23-9-2(b) states that "[i]f the administrator denies an ELTF claim, the administrator shall provide the claimant with a written explanation of all reasons for the denial of reimbursement." Louks denies all of the remaining allegations in Paragraph 100 of the Complaint.**

101.    IDEM has never imposed any particular standards for what constitutes "reasonable" and "cost effective" corrective action in order to provide guidance to eligible parties and Assignees seeking claims for reimbursement.

**ANSWER:    Louks denies all of the allegations in Paragraph 101 of the Complaint.**

102.    The UST Financial Assurance Board ("FAB") was established under IC § 13-23-11 and is responsible for promulgating cost guidelines and standards such as defining what would constitute "reasonable" and "cost effective."

**ANSWER:    Louks admits that the Indiana Legislature created the FAB through Ind. Code § 13-23-11-1 and that the FAB's duties and responsibilities are outlined in Ind. Code § 13-23-11-7. Louks denies all of the remaining allegations in Paragraph 102 of the Complaint.**

103.    The FAB is required by law to meet twice a year but has not done so since 2018, leaving eligible parties operating in the dark about what is reasonable and cost effective for the work they are performing.

**ANSWER:    Louks admits that the FAB last met on August 9, 2018. Louks denies all remaining allegations in Paragraph 103 of the Complaint.**

104.    Beginning in mid-2018, under Louks' direction, IDEM's ELTF claim reviewers began applying "the failure to prove 'reasonable and cost effective' defense" to certain other similarly situated environmental consultants as targeted by Louks.

**ANSWER:    Louks admits that IDEM's ELTF claim reviewers applied applicable statutes, rules, and the Reimbursement Guidelines to all ELTF claims, including the provision of Ind. Code § 13-23-9-1.5(a)(1) requiring the Administrator to pay only those ELTF claims that represent costs that are reasonable and cost effective. Louks denies all of the remaining allegations in Paragraph 104 of the Complaint.**

105.    Louks directed ELTF claim reviewers to deny 100% of Golars' claims for Golars' failure to prove that the work was reasonable and necessary, even though IDEM had previously approved of Golars' work plans, Golars performed the work according to the plans, the work was reasonable and cost effective, and Golars performed the work with the expectation of payment.

**ANSWER:    Louks denies all of the allegations in Paragraph 105 of the Complaint.**

106.     Pursuant to IC § 13-23-8-4(c), not more than forty-five (45) business days after an ELTF claim is submitted, the ELFT administrator is required to do one of the following:

    a.  Approve the ELTF claim and forward the claim to the auditor of the state for payment.

    b.  Send to the claimant a written notice that:

        i.  States that a correction, a clarification, or additional information is needed before the ELTF claim can be approved; and

        ii.  Provides a clear explanation:

            1.  Of the correction, clarification, or additional information that is needed; and

            2.  Of why it is needed.

    c.  Deny the claim and provide the claimant with a statement of the reasons for the denial.

IC § 13-23-8-4(c).

**ANSWER:    Louks admits that Ind. Code § 13-23-8-4(c) contains many of the requirements set forth in Paragraph 106 but denies that Paragraph 106 contains a full and complete recitation of the statute, which speaks for itself.**

107.     If the ELTF administrator denies an ELTF claim, the administrator is obligated to provide the claimant with a written explanation of all the reasons for the denial of the reimbursement. IC § 13-23-9-2. Instead, Golars was receiving blanket denials of its ELTF claims without an explanation of all the reasons for the denials.

**ANSWER:    Louks admits that Ind. Code § 13-23-9-2(b) states that "[i]f the administrator denies an ELTF claim, the administrator shall provide the claimant with a written explanation of all reasons for the denial of reimbursement." Louks denies all of the remaining allegations in Paragraph 107 of the Complaint.**

108.    On multiple occasions, Louks communicated to Golars' staff that IDEM would not reimburse Golars' claims at its historical rates, and that Golars would be "lucky" to see reimbursement of half of the costs it was seeking. This has resulted in some unreimbursed invoices for IDEM preapproved work to remain unpaid for more than 400 days.

**ANSWER:    Louks admits that some of Golars' ELTF claims are unpaid at this time. Louks denies all of the remaining allegations in Paragraph 108 of the Complaint.**

109.    Louks directed IDEM staff not to even review Golars' technical reports, some of which have not been reviewed for over 300 days. The delay in approving technical reports means Golars is unable to submit its invoices for payments, requiring it to pay and carry the costs for subcontractors and utility vendors.

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 109 of the Complaint related to the impact of ELTF claim payment delays or denials upon Golars' finances and therefore denies the same.  Louks denies all of the remaining allegations in Paragraph 109 of the Complaint.**

110.    As of April 23, 2020, Golars had more than eight hundred thousand dollars ($800,000) in claims submitted to IDEM more than 45 days ago (some as late as 100 days ago), where IDEM has failed or refused to pay the claims, contrary to IC § 13-23-8-4(c).

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 110 of the Complaint related to the amount of Golars' outstanding ELTF claims or how long they have been pending and therefore denies the same. Louks denies all of the remaining allegations in Paragraph 110 of the Complaint.**

111.    IDEM has failed to issue prompt payment on the following 29 claims as of April

23, 2020 as described in the table below:

| Project | Invoice | Submitted | Requested | Days | AR Notes |
|---|---|---|---|---|---|
| E-16047 | 19-246 | 10/31/2019 | $3,443.99 | 114 | 20200408 - Sent to accounting on 3/26/2020. |
| E-15026 | 19-266 | 11/15/2019 | $6,845.25 | 104 | 20200408 - Reviewed on 11/25/2019. |
| E-15041 | 19-244 | 11/15/2019 | $17,827.18 | 104 | 20200408 - Reviewed on 2/13/2020. |
| E-17003 | 19-271 | 11/15/2019 | $12,961.09 | 104 | 20200408 - Reviewed on 12/10/2019. |
| B-IN-11016 | 19-229 | 12/6/2019 | $12,957.10 | 89 | 20200408 - Reviewed on 12/20/2019. |
| B-IN-11016 | 19-248 | 12/6/2019 | $13,106.70 | 89 | 20200408 - Reviewed on 12/19/2019. |
| E-10008 | 19-284 | 12/6/2019 | $60,554.54 | 89 | 20200408 - Reviewed on 1/06/2020. |
| E-16058 | 19-287 | 12/6/2019 | $108,338.61 | 89 | 20200408 - Reviewed on 1/07/2020. |
| E-17035 | 19-282 | 12/6/2019 | $28,582.05 | 89 | 20200408 - Reviewed on 1/06/2020. |
| E-15028 | 19-286 | 12/12/2019 | $19,979.48 | 84 | 20200408 - Reviewed on 1/06/2020. |
| E-15043 | 19-268 | 12/12/2019 | $14,036.91 | 84 | 20200408 - Reviewed on 1/08/2020. |
| E-17017 | 19-289 | 12/12/2019 | $39,186.12 | 84 | 20200408 - Reviewed on 12/31/2019. |
| B-IN-11016 | 19-292 | 12/20/2019 | $17,488.17 | 79 | 20200408 - Reviewed on 1/13/2020. |
| E-11013 | 19-261 | 12/31/2019 | $19,767.68 | 71 | 20200408 - Reviewed on 1/15/2020. |
| E-14017 | 19-296 | 12/31/2019 | $46,852.64 | 71 | 20200408 - Reviewed on 2/13/2020. |
| E-16009 | 19-299 | 12/31/2019 | $31,506.29 | 71 | 20200408 - Reviewed on 1/21/2020. |
| E-17026 | 19-240 | 12/31/2019 | $78,979.77 | 71 | 20200408 - Reviewed on 1/16/2020. |
| E-15017 | 19-304 | 1/10/2020 | $2,007.75 | 64 | 20200408 - Reviewed on 1/28/2020. |
| B-IN-11007 | 19-298 | 1/17/2020 | $14,216.44 | 59 | 20200408 - Reviewed on 1/31/2020. |
| B-IN- **1 1010** | 19-293 | 1/17/2020 | $25,363.15 | 59 | 20200408 - Reviewed on 1/31/2020. |

| E-10012 | 19-302 | 1/17/2020 | $11,289.13 | 59 | 20200408 - Reviewed on 2/13/2020. |
| E-13016 | 19-303 | 1/17/2020 | $20,643.30 | 59 | 20200408 - Reviewed on 2/05/2020. |
| E-17027 | 19-272 | 1/17/2020 | $8,154.43 | 59 | 20200408 - Reviewed on 1/30/2020. |
| E-09001 | 20-001 | 1/31/2020 | $16,378.20 | 49 | 20200408 - Reviewed on 2/11/2020. |
| E-10008 | 19-301 | 1/31/2020 | $15,587.14 | 49 | 20200408 - Reviewed on 2/13/2020. |
| E-14005 | 20-008 | 1/31/2020 | $18,073.76 | 49 | 20200408 - Reviewed on 2/12/2020. |
| E-14007 | 20-012 | 1/31/2020 | $12,067.29 | 49 | 20200408 - Reviewed on 2/13/2020. |
| E-16008 | 18-375 | 1/31/2020 | $74,882.35 | 49 | 20200408 - Claim not reviewed. |
| E-17010 | 19-288 | 1/31/2020 | $50,131.39 | 49 | 20200408 - Reviewed on 2/14/2020. |

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 111 of the Complaint and therefore denies the same.**

112.    Golars' line of credit assumes that IDEM will pay its ELTF claims within the statutory 45-day period.

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 112 of the Complaint and therefore denies the same.**

113.    IDEM's intentional failure to promptly issue payment on these claims has all but exhausted the funds Golars' uses to cover the costs for approved remediation efforts performed by it and its subcontractors.

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 113 of the Complaint pertaining to Golars'**

**available funds and therefore denies the same. Louks denies all remaining allegations in Paragraph 113 of the Complaint.**

114.    Golars continues to receive denials of entire claims by IDEM while some other consultants are having most or all of their claims paid.

**ANSWER:    Louks admits that in the recent past, IDEM has denied some or all of Golars' claims and has paid some or all of the claims of other claimants. Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 114 of the Complaint and therefore denies the same.**

115.    Golars has raised its concerns to IDEM program staff. IDEM's response has been to stop posting payments on its publicly available electronic file cabinet, the Virtual File Cabinet ("VFC"), so that Golars would no longer be able to see when other consultants are paid their reimbursement claims.

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 115 of the Complaint and therefore denies the same.**

116.    Upon information and belief, Louks made false statements about Golars to former owners and operators of UST systems, environmental consultants, and others. Louks' false statements included his assertion that Golars had engaged in criminal activity by submitting ELTF claims in which it was not entitled to reimbursement and in violation of the False Claims Act. As a result of Louks' defamatory statements, Golars suffered public humiliation, loss of its professional reputation, and damages.

**ANSWER:    Louks denies all of the allegations in Paragraph 116 of the Complaint.**

117.    When Golars submitted status letters to IDEM requesting updates on reimbursement requests for filing in VFC, IDEM would retaliate against Golars by instead posting to the VFC erroneous and defamatory communications about Golars.

**ANSWER:    Louks denies all of the allegations in Paragraph 117 of the Complaint.**

118.    On one occasion, when Golars tried to submit VFC status letters, Louks came out of his office, told the receptionist to stop time-stamping the status letters, and to not accept any of Golars' letters, even those letters previously time-stamped as "Received".

**ANSWER:    Louks denies all of the allegations in Paragraph 118 of the Complaint.**

119.    Louks further threatened the receptionist that she would lose her job if she continued to time-stamp the Golars' status letters as "Received" or otherwise accept them for filing in the VFC.

**ANSWER:    Louks denies all of the allegations in Paragraph 119 of the Complaint.**

120.    Louks' threats to the receptionist were made in front of a Golars employee who was delivering the status letters to IDEM for filing in the VFC.

**ANSWER:    Louks denies all of the allegations in Paragraph 120 of the Complaint.**

121.    IDEM's refusal to accept Golars' filings damaged Golars because it unlawfully interfered with Golars' ability to be reimbursed from the Fund.

**ANSWER:    Louks denies all of the allegations in Paragraph 121 of the Complaint.**

122.    ELTF rules are designed to process reimbursement claims in a fair and transparent manner, with preference for priority claims, and all similarly situated claims must be processed in chronological order.

**ANSWER:    Louks admits that to the extent he participated in processing ELTF claims, they were handled in a fair and transparent manner. Louks lacks sufficient**

knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 122 of the Complaint and therefore denies the same.

123.    Under Louks' direction, IDEM has instead managed the Fund in an unlawful manner with the intent to deprive Golars and the named Plaintiffs of their rights to due process to access the Fund for reimbursement of the costs of corrective actions.

**ANSWER:    Louks denies all of the allegations in Paragraph 123 of the Complaint.**

124.    Louks' actions are especially damaging to Golars and other similarly situated environmental consultants, who are small business owners, because, as former UST Branch Section Chief and present OLQ Deputy Assistant Commissioner, Louks influences and controls the manner and speed at which work plan submissions, corrective action activities, claims for reimbursement of costs, and the ultimate site cleanup goals are processed, reviewed, and approved or denied.

**ANSWER:    Louks denies all of the allegations in Paragraph 124 of the Complaint.**

125.    IDEM has maliciously targeted Golars and, more recently, other environmental consultants not of Louks' liking for the arbitrary and capricious denial of 100% of their claims in an effort to deny their claims and prevent them from doing work covered by the ELTF.

**ANSWER:    Louks denies all of the allegations in Paragraph 125 of the Complaint.**

D.    Louks maliciously targeted Golars in a dispute between Golars and a former gas station owner over ELTF reimbursement eligibility, even though Louks previously wrote that IDEM should not pick sides and IDEM did not have the legal authority to enforce an agreement between the parties.

**ANSWER:    To the extent this allegation is a reference to Exhibit 7 to the Complaint, Louks admits that Exhibit 7 is a copy of an email exchange he participated in. Louks denies all remaining allegations in Paragraph D of the Complaint.**

126.    Upon information and belief, Louks disparaged Golars by claiming that Golars' conduct of seeking reimbursement for corrective actions was not only unlawful, but criminal under Louks' unlawful interpretation of the ELTF statutes.

**ANSWER:    Louks denies all of the allegations in Paragraph 126 of the Complaint.**

127.    Louks knew IDEM did not have the authority to pick sides or enforce agreements between private parties per his own written correspondence, but still chose to maliciously target Golars to squelch its ELTF claims at a site formerly owned and operated by Sunoco Inc. ("Sunoco"). (Ex. 4.)

**ANSWER:    Louks denies all of the allegations in Paragraph 127 of the Complaint.**

128.    Louks and IDEM intentionally denied Golars' ELTF claims for corrective action at a property formerly owned and operated by Sunoco. Golars had been assigned the right to seek reimbursement of its claims by an eligible party, Keystone Petroleum Inc. ("Keystone"). Keystone appealed IDEM's actions as being against the law. The OEA agreed with Keystone and held that IDEM could not deprive Keystone, or Golars as their Assignee, of its right to seek reimbursement from the Fund on the basis claimed by IDEM. *In the Matter of Objection to the Denial of Excess Liability Trust Fund Claim, ELTF #199607527/FID #9574, Former Pappy's Sunoco Station, Keystone Petroleum Inc.,* Cause No. 19-F-J-5071. *(See* Ex. 9.) Not only did IDEM intentionally interfere with Golars' attempt to seek reimbursement, but it sought to intentionally interfere with Golars' contractual relationship with its client, who had assigned Golars the right to reimbursement. *Id.*

**ANSWER:    Louks admits that (a) on June 7, 2019, IDEM notified Golars that Sunoco was the only entity entitled to reimbursement for ELTF claims related to the Former Pappy's Sunoco Station site at 2315 East Troy Avenue in Indianapolis, Indiana**

(the "Pappy's Sunoco Site"); (b) on August 7, 2019 IDEM issued eight (8) additional letters denying reimbursement for ELTF claims related to the Pappy's Sunoco Site; (c) in *In the Matter of  Objection to the Denial of Excess Liability Trust Fund Claim ELTF #199607527/FID #9574 Former Pappy's Sunoco Station, Keystrone Petroleum, Inc., Indianapolis, Marion County, Indiana* (hereinafter the "Pappy's Sunoco Appeal"), the Office of Environmental Adjudication held that Keystone Petroleum, Inc. is an eligible party for ELTF reimbursement. That matter is still active and the ruling is subject to appeal. Louks denies all of the remaining allegations in Paragraph 128 of the Complaint.

129.    The OEA ultimately ruled that IDEM did not have the authority to enforce the prior agreement between private parties and that Golars' client, Keystone, clearly fell under the definition of "eligible party" as a "transferee of property" and therefore had the right to seek reimbursement. *Id.*

**ANSWER:    Louks admits that in the Pappy's Sunoco Appeal, the Office of Environmental Adjudication held that (a) Keystone clearly falls under the definition of an eligible party as a transferee of property upon which a UST was located but from which the UST has been removed and therefore has its own separate right to seek reimbursement, (b) IDEM presented no convincing arguments that it has the authority to enforce the 2001 agreement between the parties, and (c) that the agreement should have no effect on IDEM's determination of who is eligible. That matter is still active and the ruling is subject to appeal. Louks denies all of the remaining allegations in Paragraph 129 of the Complaint.**

130.    IDEM, again, did not appeal the OEA's decision in the Sunoco matter and is now bound by the decision.

**ANSWER:    Louks admits that IDEM did not seek judicial review of the Pappy's Sunoco Appeal and that IDEM is bound to OEA's decision for purposes of the ELTF claims at issue in that matter. However, the matter is still pending and is subject to appellate rights. Louks denies all of the remaining allegations in Paragraph 130 of the Complaint.**

131.    Golars and its client suffered damages as a result of IDEM's unlawful actions in the Sunoco matter, including delayed payment of its ELTF claims and having to incur thousands of dollars in attorneys' fees and expenses that it should not have incurred but for IDEM's malicious conduct toward Golars and its client.

**ANSWER:    Louks denies all of the allegations in Paragraph 131 of the Complaint.**

E.    Louks maliciously targeted Golars by preemptively issuing "No Further Action" orders in an effort to cut off Golars' cleanup activities, which resulted in high levels of hazardous substances and known human carcinogens from leaking USTs at 30 sites, in direct contravention to IDEM's purpose of protecting human health and the environment.

**ANSWER:    Louks denies all of the allegations in Paragraph E of the Complaint.**

132.    Louks, acting in his individual capacity and/or official capacity as then-Branch Chief for the OLQ UST Branch and presently in his role as OLQ Deputy Assistant Commissioner, has implemented policies and procedures at IDEM to prevent Golars from performing corrective actions to address soil, groundwater, and/or vapor contamination at 30 ELTF sites by causing program managers to issue "No Further Action" orders for those sites.

**ANSWER:    Louks admits that IDEM has issued "No Further Action" letters pertaining to sites for which Golars was performing corrective actions.  Louks denies all remaining allegations in Paragraph 132 of the Complaint.**

133.    No Further Action letters are supposed to be issued by IDEM when no further corrective action is required. Specifically, IDEM is supposed to issue No Further Action Letters after the successful implementation of a remediation work plan that brings contamination within acceptable risk-based levels, or the exposure resulting from the contamination is adequately controlled.

**ANSWER:    Louks admits that IDEM issues No Further Action Letters when it determines, pursuant to applicable laws and policies, that no further corrective actions are necessary. Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 133 of the Complaint and therefore denies the same.**

134.    In 2009, Indiana House Enrolled Act 1162 was enacted into law, pursuant to which IC § 13-25-5-8.5 was amended (effective July 1, 2009) to allow IDEM to authorize site closures based on site specific risk assessments that take into account site specific factors, including remedial measures, restrictive covenants, and environmental restrictive ordinances that: (A) manage risks; and (B) control completed or potentially exposure pathways.

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 134 of the Complaint and therefore denies the same.**

135.    Upon information and belief, between 2009 and 2017, IDEM rarely if ever issued No Further Action orders on ELTF sites where contaminants on-site, including benzene, were at or above residential screening levels in groundwater at the boundary of an adjacent property, especially where an Indiana-licensed geologist or environmental engineer provided a professional

opinion that additional remediation activities were necessary to reduce the risks to human health and the environment for either on-site or off-site human receptors exposed to the contamination.

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 135 of the Complaint and therefore denies the same.**

136.    Before 2018, when Louks began to aggressively close ELTF sites through the issuance of No Further Action orders, IDEM would rarely grant a consultant's request to close an ELTF site where the groundwater concentration of benzene at the boundary of an adjacent property was at or above 28 ppb, with greater reluctance to grant such a request where the adjacent property was used for residential purposes.

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 136 of the Complaint and therefore denies the same.**

137.    IDEM's pre-2018 reasoning for requiring ELTF sites to be remediated to the extent that benzene concentrations at an adjacent property line is at or below screening levels was to ensure that adjacent property owners and residents were not exposed to contamination that presented an unacceptable risk to human health or the environment.

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 137 of the Complaint and therefore denies the same.**

138.    Prior to Louks' practice of encouraging the issuance of No Further Action orders for ELTF sites, IDEM relied on the opinions of its geologists, environmental engineers, and risk assessors to calculate site specific risks to be used in determining the acceptability of site closures.

**ANSWER:**    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 138 of the Complaint and therefore denies the same.

139.    Louks is not qualified as an environmental engineer, geologist, or risk assessor to decide from a scientific basis whether a contaminated site should be issued a No Further Action order.

**ANSWER:**    Louks admits that he is not an environmental engineer, a geologist, or a risk assessor.  Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 139 of the Complaint and therefore denies the same.

140.    Louks has no college degrees or professional certifications in biology, chemistry, the fate and transport of contaminants in the environment, microbiology, immunology, toxicology, neurology, or medicine. Louks earned college degrees in classical and medieval studies, business, and law.

**ANSWER:**    Louks admits that he has earned a Bachelor of Arts Degree in Classical Studies and Medieval Studies, an MBA with a concentration in International Business, a law degree (juris doctor or JD), and a graduate certificate in Environmental and Natural Resources law.  Louks further admits that he has no other college degrees or professional certifications.

141.    Louks has instituted policies and procedures to mandate the issuance of No Further Action orders at ELTF sites even where licensed geologists and environmental engineers have expressed their professional opinions that additional environmental remediation is

necessary to mitigate the risk to human health and the environment from contaminants. *(See* <u>Ex. 10.)</u>

**ANSWER:    Louks admits that IDEM has issued No Further Action letters in situations where licensed geologists or environmental engineers have recommended additional removal or remedial efforts. Louks denies all of the remaining allegations in Paragraph 141 of the Complaint.**

142.    The impact from IDEM's issuance of a No Further Action orders is to prevent any additional cleanup of contamination. The impact of IDEM's issuance of No Further Action orders to Golars is that it is intended to prevent Golars from doing any additional work at a site, even when that work is reasonably necessary. The impact of IDEM's issuance of a No Further Action order to Golars' clients is that IDEM is leaving their sites with high levels of contamination placing them at risk for third party lawsuits and diminishing the expected values of their property as they are being deprived of appropriately conducted corrective actions to which they are entitled as eligible parties under Indiana law.

**ANSWER:    Louks admits that the issuance of a No Further Action letter usually renders additional removal or remedial efforts unnecessary. Louks denies all of the remaining allegations in Paragraph 142 of the Complaint.**

143.    Louks has demanded the issuance of No Further Action orders at ELTF sites where Golars is acting as the environmental consultant for the property owner where benzene contamination in on-site groundwater is present at unacceptable levels. *(See* https://www.in.gov/idem/cleanups/files/remediation closure guide.pdf). This includes a site where over 10,000 ppb of benzene exists in groundwater, and the concentration at the boundary of the adjacent property has exceeded hundreds of ppb.

**ANSWER:** **Louks admits that IDEM has issued No Further Action letters for sites where soil or groundwater contamination would remain in place. Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 143 of the Complaint pertaining to the specific contamination levels of such sites and therefore denies the same. Louks denies all of the remaining allegations of Paragraph 143 of the Complaint.**

144.    Louks' actions in demanding the issuance of these No Further Action orders has resulted in the improper closures of remediation efforts at 30 ELTF sites in Indiana, placing Hoosiers' health and environment at risk, for the sole purpose of closing sites where Golars is the property owners' consultant of choice in an effort to cause economic harm to Golars.

**ANSWER:** **Louks denies all of the allegations in Paragraph 144 of the Complaint.**

145.    Pursuant to IC § 13-25-5-8.5(b), the remediation objectives for each hazardous substance and any petroleum on a site is to be based on:

    a.  Background levels of hazardous substances and petroleum that occur naturally on the site; or

    b.  An assessment of the risks pursuant to subsection (d) posed by the hazardous substance or petroleum presently found on the site taking into consideration the following:

        i.  Expected future use of the site.

        ii. Measurable risks to human health, natural resources, or the environment based on the:

            3.  The activities that take place; and

            4.  Environmental impact;

        on the site.

IC § 13-25-5-8.5(b).

**ANSWER:**    **Louks admits that much of the language in Paragraph 145 appears in Ind. Code § 13-25-5-8.5(b), which speaks for itself, but denies that Paragraph 145 of the Complaint includes the full and complete text of the statute.**

146.    For IDEM, under IC § 13-25-5-8.5(d), the risk based remediation objectives shall be based on one (1) of the following:

   a. Levels of hazardous substances and petroleum calculated by the department using standard equations and default values for particular hazardous substances or petroleum.
   b. Levels of hazardous substances and petroleum calculated using site specific data for the default values in the department's standard equations.
   c. Levels of hazardous substances and petroleum developed based on site specific risk assessments that take into account site specific factors, including remedial measures, restrictive covenants, and environmental restrictive ordinances that:
      i. Manage risk; and
      ii. Control completed or potential exposure pathways.

IC § 13-25-5-8.5(d).

**ANSWER:**    **Louks admits that the language in Paragraph 146 appears in Ind. Code § 13-25-5-8.5(d), which speaks for itself.**

147.    In passing these statutes, the Legislature clearly envisioned a data and scientifically-driven analysis when deciding whether a site warranted No Further Action.

**ANSWER:**    **Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 147 of the Complaint and therefore denies the same.**

148.    Despite lacking any scientific college degrees and certifications, Louks took it upon himself to judge that many sites were deemed suitable for No Further Action orders contrary to the levels of contamination still present at the sites, and contrary to the opinions of licensed geologists, environmental engineers, and risk assessors.

**ANSWER:**    **Louks denies all of the allegations in Paragraph 148 of the Complaint.**

149.    On one or more occasions, despite the recommendations from licensed engineers, geologists, and other professionals that additional cleanup work was necessary, Louks directed IDEM staff to improperly stop all cleanup and monitoring activities and issue "No Further Action" orders and Environmental Restrictive Covenants to cut off Golars' ELTF claims.

**ANSWER:**    **Louks admits that IDEM has on one or more occasions disagreed with the recommendations of licensed engineers, geologists, and other professionals that additional removal or remedial actions are necessary and has issued No Further Action letters. Louks denies all of the remaining allegations in Paragraph 149 of the Complaint.**

150.    These sites that have been improperly deemed to need No Further Action are located throughout the State of Indiana.

**ANSWER:**    **Louks denies all of the allegations in Paragraph 150 of the Complaint.**

151.    IDEM knows of the dangers of leaving these contaminants on ELTF sites, yet Louks has insisted closing these sites through No Further Action orders, which has prevented those sites from being appropriately remediated.

**ANSWER:**    **Louks admits that IDEM is aware of the risks of closing sites with soil and groundwater contamination in place. Louks denies all of the remaining allegations in Paragraph 151 of the Complaint.**

152.    Louks' decision to direct the issuance of "No Further Action" orders (in an effort to put Golars out of business for ELTF claims) and leave high levels of contamination from hazardous substances, including those known to cause cancer in people, at 30 Indiana sites presents an unacceptable health risk to Hoosiers.

**ANSWER:**    **Louks denies all of the allegations in Paragraph 152 of the Complaint.**

153.    Many of the 30 sites that Louks targeted for the issuance of "No Further Action" orders are in areas where the populations have limited means and resources and are deserving of environmental justice.

**ANSWER:    Louks admits that all Hoosiers are deserving of environmental justice. Louks denies all of the remaining allegations in Paragraph 153 of the Complaint.**

F.    IDEM has deprived Golars' access to Louks' emails, texts, and other records concerning his malicious targeting of Golars and its clients regarding the allegations of this complaint.

**ANSWER:    Louks denies all of the allegations in Paragraph F of the Complaint.**

154.    On September 5, 2019, Plaintiffs, through counsel, requested public records of email correspondence from IDEM pursuant to Indiana's Access to Public Records Act.

**ANSWER:    Louks admits that IDEM received a request for public records, including his email correspondence. Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 154 of the Complaint and therefore denies the same.**

155.    On information and belief, Louks has stated to one or more people that Golars was "raping the Fund" and he falsely accused Golars of criminal conduct based on Louks' unlawful interpretation of the ELTF reimbursement statute.

**ANSWER:    Louks denies that he falsely accused Golars of criminal conduct. Louks states that he has no recollection of using the phrase "raping the Fund" when describing Golars' actions and therefore denies that allegation as well. Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 155 of the Complaint and therefore denies the same.**

156.    Plaintiffs have submitted a public access to information request for Louks' communications that reference the word "raped" with third parties and internally at IDEM. The latter request was based on Plaintiffs' reasonable belief that IDEM representatives may have similarly used such language in discussions with other environmental consultants. Other consultants are reluctant to speak up out of fear of being targeted by Louks and IDEM.

**ANSWER:    Louks admits that a public records request was submitted for his electronic communications that reference the word "raped." Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 156 of the Complaint and therefore denies the same.**

157.    Plaintiffs provided IDEM the names of the senders and recipients, the keywords or topics of the emails expecting to receive, and a time frame of when the emails would have been sent.

**ANSWER:    Louks admits that a public records request was submitted for his electronic communications with a list of senders, recipients, keywords, and a time frame. Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 157 of the Complaint and therefore denies the same.**

158.    Plaintiffs have no assurance that the search for responsive documents will be performed adequately. Plaintiffs expected IDEM's Office of Legal Counsel or some other independent person would perform the search for responsive documents, but were told that Louks, who has orchestrated the campaign of official harassment to Golars, would be tasked to search his own emails for responsive communications and that no one would review the adequacy of his search. IDEM has said Louks pulled "responsive" communications, which were being reviewed by IDEM's Office of Legal Counsel, yet no documents have been produced.

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 158 of the Complaint and therefore denies the same.**

159.    Plaintiffs have followed up numerous times requesting updates from IDEM as to the status of the request.

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 159 of the Complaint and therefore denies the same.**

160.    Two hundred and fifty two (252) days have lapsed since the information request was submitted and the filing of this Complaint, and Plaintiffs have not received any of the requested public records.

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 160 of the Complaint and therefore denies the same.**

161.    On April 6, 2020, Plaintiffs, through counsel, filed a formal complaint with the Office of the Public Access Counselor stating that IDEM's unreasonable delay is as a violation of the Public Records Act.

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 161 of the Complaint and therefore denies the same.**

162.    While the Public Access Counselor is supposed to decide the merits of Golars' request and IDEM's objections, Golars has in the meantime, been deprived of relevant records that, upon information and belief, may have been wrongfully withheld or destroyed.

**ANSWER:** **Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 162 of the Complaint and therefore denies the same.**

163. Plaintiffs bring this action under Rule 23 of the Indiana Rules of Trial Procedure on behalf of themselves and all others similarly situated. Plaintiffs seek to represent five distinct classes defined as follows.

**ANSWER:** **Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 163 of the Complaint and therefore denies the same.**

164. Pursuant to Indiana Trial Rule 23(A), Plaintiffs bring this action on behalf of themselves and on behalf of the following classes:

### Five Distinct Classes

- **Class 1**: All eligible parties, as defined in IC § 13-11-2-62.5 (4)[1] and (5)[2], from January 1, 2018 to present, who entered into Agreed Orders, as required by the Policy[3], and have not had their Agreed Orders rescinded by IDEM.

- **Class 2**: All eligible parties, as defined in IC § 13-11-2-62.5 (4) and (5), from January 1, 2018 to present, who had their ELTF claims denied because they refused to enter into Agreed Orders, as required by the Policy.

- **Class 3**: All Assignees, as permitted under IC § 13-23-8-4(b)[4], from January 1, 2018 to present, who had their ELTF claims denied because of the Policy.

---

[1] A transferee of property upon which a UST is located.
[2] A transferee of property upon which a UST was located but from which the UST has been removed.
[3] The use of Policy in each of the class definitions refers to The ELTF Reimbursement Suspension Policy.
[4] An eligible party may assign the right to receive payment of an ELTF claim to another person.

- **Class 4**: All eligible parties, as defined in IC § 13-11-2-62.5 (4) and (5), and Assignees, as permitted under IC § 13-23-8-4(b), from January 1, 2018 to present, who had their ELTF claims for technical report preparation costs denied as not being "reasonable and cost effective."

- **Class 5**: All eligible parties, as defined in IC § 13-11-2-62.5 (4) and (5), and Assignees, as permitted under IC § 13-23-8-4(b), from January 1, 2018 to present, who received No Further Action orders from IDEM without having requested the issuance of such No Further Action orders.

**ANSWER:**    Louks denies that any class should be certified in this case. Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 164 of the Complaint, including its footnotes, and therefore denies the same.

165.    Excluded from each defined Class are any employees of IDEM. Plaintiffs reserve the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

**ANSWER:**    Louks denies that any class should be certified in this case. Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 165 of the Complaint and therefore denies the same.

166.    *Numerosity.* The members of each Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are hundreds of class members that are eligible parties and more than a dozen class members that are Assignees, the precise number of Class members is unknown to Plaintiffs but may be ascertained from IDEM's books and records. Class members may be notified of

the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

**ANSWER:    Louks denies that any class should be certified in this case and further denies that the members of the purported classes are so numerous that individual joinder is impractical. Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 166 of the Complaint and therefore denies the same.**

167.    *Existence and Predominance of Common Questions of Law and Fact*. This action involves common questions of law and fact, which predominate over questions affecting individual Class members. Some of the questions of law or fact that predominate in this matter include, but are not limited to, the following:

a.    Whether IDEM's demand that eligible parties, as defined in IC § 13-11-262.5 (4) and (5), enter into Agreed Orders, as required by the Policy, was unlawful;

b.    Whether eligible parties, as defined in IC § 13-11-2-62.5 (4) and (5), who entered into Agreed Orders, as required by the Policy, are entitled to have those Agreed Orders rescinded because the Policy was unlawful;

c.    Whether IDEM's denial of ELTF claims presented by eligible parties, as defined in IC § 13-11-2-62.5 (4) and (5), who refused to enter into Agreed Orders, as required by the Policy, was unlawful;

d.    Whether eligible parties, as defined in IC § 13-11-2-62.5 (4) and (5), who refused to enter into Agreed Orders, as required by the Policy, are entitled to have their ELTF claims processed;

e.  Whether IDEM's denial of ELTF claims presented by Assignees, as permitted under IC § 13-23-8-4(b), because of the Policy was unlawful;

f.  Whether Assignees, as permitted under IC § 13-23-8-4(b), who had their ELTF claims denied because of the Policy are entitled to have their ELTF claims processed;

g.  Whether IDEM's denial of ELTF claims presented by eligible parties, as defined in IC § 13-11-2-62.5 (4) and (5), and Assignees, as permitted under IC § 13-23-8-4(b), from January 1, 2018 to present, who had their ELTF claims for technical report preparation costs denied as not being "reasonable and cost effective" was unlawful;

h.  Whether eligible parties, as defined in IC § 13-11-2-62.5 (4) and (5), and Assignees, as permitted under IC § 13-23-8-4(b), from January 1, 2018 to present, who had the entirety of their ELTF claim report preparation costs denied as not being "reasonable and cost effective" are entitled to have their ELTF claims re-evaluated;

i.  Whether IDEM's issuance of No Further Action orders to eligible parties, as defined in IC § 13-11-2-62.5 (4) and (5), and Assignees, as permitted under IC § 13-23-8-4(b), who did not request issuance of such No Further Action orders was unlawful;

j.  Whether eligible parties and Assignees, who received but did not request the issuance of No Further Action orders are entitled to have the issuance of the No Further Action orders re-evaluated;

k.      Whether Louks' actions were taken within the course and scope of his official capacity at IDEM;

l.      Whether any of the Classes suffered Class-wide damages;

m.      Whether there is a mathematical formula to award such Class-wide damages; and

n.      Whether Plaintiffs and the Class are entitled to an award of reasonable attorneys' fees, interests, and costs.

**ANSWER:      Louks denies all of the allegations in Paragraph 167 of the Complaint.**

168.    *Typicality.* Plaintiffs' claims are typical of the claims of the Class members for each Class because Plaintiffs and other Class members are all similarly affected by Defendants' issuance of the Policy. This includes the refusal to rescind Agreed Orders and the refusal to process claims of eligible parties and Assignees; denying the entirety of eligible parties' and Assignees' ELTF claim report preparation costs for not being "reasonable and cost effective;" and issuance of No Further Action orders where eligible parties and Assignees did not ask for the issuance of No Further Actions orders.

**ANSWER:      Louks denies all of the allegations in Paragraph 168 of the Complaint.**

169.    Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all the Class members. Plaintiffs are representative of the Class and have standing to advance these claims because they were subject to and damaged by the Defendants' conduct as set forth in greater detail throughout this Complaint.

**ANSWER:      Louks denies all of the allegations in Paragraph 169 of the Complaint.**

170.    *Adequacy of Representation.* Plaintiffs are adequate Class representatives because Plaintiffs have been harmed by the unlawful actions of the Defendants, wish to obtain redress for the wrongs that have been done to Plaintiffs and Class members, and also want to ensure that the

Defendants are not allowed to continue this unlawful conduct towards others that are similarly situated. Plaintiffs will fairly and adequately protect the interests of the Class members and do not have interests that conflict with or are antagonistic to the interests of other Class members. Plaintiffs have retained competent counsel that have substantial experience in complex class action litigation, including experience acting as class counsel in environmental litigation.

- **Class 1 Representatives.** Plaintiff Warren is an adequate class representative because it was an eligible party as defined IC § 13-11-2-62.5 (4) and (5) during the relevant time period and entered into Agreed Orders with IDEM due to the Policy. Warren's Agreed Order has not been rescinded.

- **Class 2 Representatives.** Plaintiffs Daleen1 and Sail are adequate class representatives because they were eligible parties as defined in IC § 13-11-2-62.5 (4) and (5) during the relevant time period and had their ELTF claims denied because they refused to enter into Agreed Orders, as required by the Policy.

- **Class 3 Representatives.** Plaintiff Golars is an adequate class representative because it was an Assignee, as permitted under IC § 13-23-8-4(b), during the relevant time period, and had its ELTF claims denied because of the Policy.

- **Class 4 Representatives.** Plaintiffs Golars, Daleen1, Sail, and Warren are adequate class representatives because they were eligible parties, as defined in IC § 13-11-2-62.5 (4) and (5), or were Assignees, as permitted under IC § 13-23-8-4(b), during the relevant time period who had their ELTF claims for technical report preparation costs denied as not being "reasonable and cost effective."

- **Class 5 Representatives.** Plaintiffs Golars, Daleen1, Sail, and Warren are adequate class representatives because they were eligible parties, as defined in IC § 13-11-2-62.5 (4) and

(5), or were Assignees, as permitted under IC § 13-23-8-4(b), during the relevant time period and received No Further Action orders from IDEM without having requested the issuance of such No Further Action orders.

**ANSWER:**    Louks denies all of the allegations in Paragraph 170 of the Complaint.

171.    ***Superiority.*** A class action is superior to all other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individual litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. Furthermore, even if Class members could afford such individualized litigation, the court system would be overwhelmed by such redundant litigation of the same factual and legal issues set forth in the Complaint. Separate actions by individual members of the Class would risk inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants. Separate actions would also risk adjudications with respect to individual Class members which would, as a practical matter, be dispositive of the interest of other Class members not parties to the adjudication, or substantially impair or impede their ability to protect their interests. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

**ANSWER:**    Louks denies all of the allegations in Paragraph 171 of the Complaint.

172.    Pursuant to Indiana Trial Rule 23(C)(4)(a), Plaintiffs in the alternative seek certification of the following issues:

- **Class Issue 1.** Whether the Policy was unlawful.

- **Class Issue 2.** Whether IDEM's demand that eligible parties, as defined in IC § 13-11-2-62.5 (4) and (5), enter into Agreed Orders, as required by the Policy, was unlawful.

- **Class Issue 3.** Whether eligible parties, as defined in IC § 13-11-2-62.5 (4) and (5), who entered into Agreed Orders, as required by the Policy, are entitled to have those Agreed Orders rescinded because the Policy was unlawful.

- **Class Issue 4.** Whether IDEM's denial of ELTF claims presented by eligible parties, as defined in IC § 13-11-2-62.5 (4) and (5), who refused to enter into Agreed Orders, as required by the Policy, was unlawful.

- **Class Issue 5.** Whether eligible parties, as defined in IC § 13-11-2-62.5 (4) and (5), who refused to enter into Agreed Orders, as required by the Policy, are entitled to have their ELTF claims processed.

- **Class Issue 6.** Whether IDEM's denial of ELTF claims presented by Assignees, as permitted under IC § 13-23-8-4(b), because of the Policy was unlawful.

- **Class Issue 7.** Whether Assignees, as permitted under IC § 13-23-8-4(b), who had their ELTF claims denied because of the Policy are entitled to have their ELTF claims processed.

- **Class Issue 8.** Whether IDEM's denial of ELTF claims presented by eligible parties, as defined in IC § 13-11-2-62.5 (4) and (5), and Assignees, as permitted under IC § 13-23-8-4(b), who had their ELTF claims for technical report preparation costs denied as not being "reasonable and cost effective" was unlawful.

- **Class Issue 9.** Whether eligible parties, as defined in IC § 13-11-2-62.5 (4) and (5), and Assignees, as permitted under IC § 13-23-8-4(b), who had their ELTF claims for technical report preparation costs denied as not being "reasonable and cost effective" are entitled to have their ELTF claims re-evaluated.

- **Class Issue 10.** Whether IDEM's issuance of No Further Action orders to eligible parties, as defined in IC § 13-11-2-62.5 (4) and (5), and Assignees, as permitted under IC § 13-238-4(b), who did not ask for the issuance of such No Further Action orders was unlawful.

- **Class Issue 11.** Whether eligible parties and Assignees, who received but did not request the issuance of No Further Action orders are entitled to have the issuance of the No Further Action orders re-evaluated.

- **Class Issue 12.** Whether Louks' actions were taken within the course and scope of his official capacity at IDEM.

- **Class Issue 13.** Whether any of the Classes suffered Class-wide damages.

- **Class Issue 14.** Whether there is a mathematical formula to award such Class-wide damages.

- **Class Issue 15.** Whether Plaintiffs and the Class are entitled to an award of reasonable attorneys' fees, interests, and costs.

    **ANSWER:**   **Louks denies all of the allegations in Paragraph 172 of the Complaint.**

    173.    Maintaining this action as a class action to adjudicate these particular issues is advantageous and economic because these issues are common to each of the five Classes even if other issues in the case need to be litigated separately by each Class or Class member.

    **ANSWER:**   **Louks denies all of the allegations in Paragraph 173 of the Complaint.**

    174.    A class action is best suited to resolve this controversy because the cause of the damages is a single course of conduct by the Defendants which is identical for each of the Plaintiffs.

    **ANSWER:**   **Louks denies all of the allegations in Paragraph 174 of the Complaint.**

## CLAIMS FOR RELIEF

### Count I — Injunctive Relief

175.    Each preceding paragraph is incorporated herein by reference.

**ANSWER:    For his answer to Paragraph 175 of the Complaint, Louks adopts and incorporates his answers to each preceding paragraph by reference.**

176.    Plaintiffs seek injunctive relief in the form of an Order requiring that:

a.    IDEM formally rescind the Policy;

b.    IDEM remove the unlawful Policy from its website or prominently indicate that the Policy has been declared unlawful and has been rescinded;

c.    IDEM formally rescind each Agreed Order that IDEM wrongfully required from eligible parties, as defined in IC § 13-11-2-62.5 (4) and (5), under the Policy;

d.    IDEM process ELTF claims submitted by eligible parties, as defined in IC § 13-112-62.5 (4) and (5), and Assignees, as permitted under IC § 13-23-8-4(b), that IDEM refused to process under its Policy;

e.    IDEM re-evaluate ELTF claims submitted by eligible parties, as defined in IC § 1311-2-62.5 (4) and (5), and Assignees, as permitted under IC § 13-23-8-4(b), who Had their ELTF claims for technical report preparation costs denied as not being "reasonable and cost effective;"

f.    IDEM re-evaluate its issuance of No Further Action orders where No Further Action orders were not requested;

g.    IDEM declare that it will not take retribution against Plaintiffs and the Class members for their lawful actions of challenging IDEM's unlawful policy and practices; and

70

h. IDEM follow all regulatory and statutory procedures for implementing determinations for reasonableness and cost effectiveness, including notice and public comment.

**ANSWER:   Louks denies all of the allegations in Paragraph 176 of the Complaint.**

177.   Accordingly, with respect to the injunctive relief, Plaintiffs, on behalf of themselves and the proposed Classes, prays for the relief set forth below.

**ANSWER:   Louks denies all of the allegations in Paragraph 177 of the Complaint.**

### Count II – 42 U.S.C. § 1983 Equal Protection

178.   Each preceding paragraph is incorporated herein by reference.

**ANSWER:   For his answer to Paragraph 178 of the Complaint, Louks adopts and incorporates his answers to each preceding paragraph by reference.**

179.   Plaintiff Golars brings this Equal Protection claim under 42 U.S.C. §1983 for retrospective relief as a class of one against Defendant Louks in his individual capacity for his actions taken to deliberately deprive Golars and its clients (mostly new Americans of Indian descent) from their ability to receive payment from the ELTF.

**ANSWER:   Louks denies all of the allegations in Paragraph 179 of the Complaint.**

180.   Louks is a powerful public employee and has singled out Golars in particular for disparate treatment out of sheer vindictiveness and has orchestrated a campaign of official harassment directed against Golars out of sheer malice unrelated to any legitimate state objective.

**ANSWER:** **Louks denies all of the allegations in Paragraph 180 of the Complaint.**

181.    Louks intentionally treated Golars vindictively and differently from other similarly situated environmental consultants. There are environmental consultants who routinely receive 100% of their claims for reimbursement even though Golars, employing the same practices, has had 100% of its claims rejected.

**ANSWER:** **Louks denies all of the allegations in Paragraph 181 of the Complaint.**

182.    Louks refused to accept Golars' status letters for filing purely because they were from Golars and has made a number of vindictive and false accusations about Golars' business practices, including that Golars was engaging in criminal acts, had violated the False Claims Act, and was "raping the Fund."

**ANSWER:** **Louks denies all of the allegations in Paragraph 182 of the Complaint.**

183.    Louks has targeted Golars because of the number of claims it submitted to ELTF for reimbursement and because of personal animosity towards its owners being new Americans of Indian descent.

**ANSWER:** **Louks denies all of the allegations in Paragraph 183 of the Complaint.**

184.    The pattern of conduct by Louks towards Golars was not a legitimate exercise of discretion, but rather was undertaken with malice, willfulness, and reckless indifference to Golars' rights.

**ANSWER:** **Louks denies all of the allegations in Paragraph 184 of the Complaint.**

185.    Louks' mistreatment of Golars has damaged its reputation in the industry and damaged it financially.

**ANSWER:** **Louks denies all of the allegations in Paragraph 185 of the Complaint.**

186.    Accordingly, with respect to Count II, Plaintiff Golars prays for the relief set forth below.

**ANSWER:** **Louks denies all of the allegations in Paragraph 186 of the Complaint.**

<u>**Count III – 42 U.S.C. § 1983 Equal Protection**</u>

187.    Each preceding paragraph is incorporated herein by reference.

**ANSWER:** **For his answer to Paragraph 187 of the Complaint, Louks adopts and incorporates his answers to each preceding paragraph by reference.**

188.    Plaintiffs Daleen1, Sail, Warren, and USSBOA bring this Equal Protection claim under 42 U.S.C. § 1983 for retrospective relief against Defendant Louks in his individual capacity for his actions taken.

**ANSWER:** **Louks denies all of the allegations in Paragraph 188 of the Complaint.**

189.    Daleen1, Sail, Warren, and many of USSBOA members are clients of Golars.

**ANSWER:** **Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 189 of the Complaint and therefore denies the same.**

190.    Louks has singled out members of a vulnerable class for unequal treatment.

**ANSWER:    Louks denies all of the allegations in Paragraph 190 of the Complaint.**

191.    Golars' clientele, listed above in paragraph 191, consists primarily of owner-operators of Indian descent. As a result of Louks' vindictiveness and animosity towards Golars, Louks has also singled out Golars' clientele for unequal treatment.

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 191 of the Complaint regarding Golars clientele and their race and therefore denies the same.  Louks denies all of the remaining allegations of Paragraph 191 of the Complaint.**

192.    Louks victimized Daleen1, Sail, Warren, and USSBOA based on their membership in a certain class of individuals.

**ANSWER:    Louks denies all of the allegations in Paragraph 192 of the Complaint.**

193.    Louks treated Daleen1, Sail, Warren, and USSBOA differently than other similarly-situated individuals not belonging to the class of Daleen1, Sail, Warren, and USSBOA.

**ANSWER:    Louks denies all of the allegations in Paragraph 193 of the Complaint.**

194.    The differential treatment of Daleen1, Sail, Warren, and USSBOA was intentional and arbitrary, motivated by nefarious and discriminatory purposes, and was not rationally-related to any governmental interest.

**ANSWER:    Louks denies all of the allegations in Paragraph 194 of the Complaint.**

195.     Louks' actions were objectively unreasonable, and undertaken with malice, willfulness, and reckless indifference to the rights of others, including Daleen1, Sail, Warren, and USSBOA.

**ANSWER:    Louks denies all of the allegations in Paragraph 195 of the Complaint.**

196.     Louks' mistreatment of Golars' clientele was vindictive and damaged their reputations in the industry and damaged them financially.

**ANSWER:    Louks denies all of the allegations in Paragraph 196 of the Complaint.**

197.     As a direct and proximate result of the foregoing conduct of Louks, Daleen1, Sail, Warren, and USSBOA suffered harm.

**ANSWER:    Louks denies all of the allegations in Paragraph 197 of the Complaint.**

198.     Accordingly, with respect to Count III, Plaintiffs Daleen1, Sail, Warren, and USSBOA pray for the relief set forth below.

**ANSWER:    Louks denies all of the allegations in Paragraph 198 of the Complaint.**

## Count IV – Defamation

199.     Each preceding paragraph is incorporated herein by reference.

**ANSWER:    For his answer to paragraph 199 of Plaintiff's Complaint, Louks adopts and incorporates his answers to each preceding paragraph by reference.**

200.     Plaintiff Golars bring this claim against Defendants IDEM and Louks.

**ANSWER:    Paragraph 200 contains no allegations pertaining to Louks and therefore no response is required.  To the extent a response is required, Louks denies all allegations in Paragraph 200 of the Complaint.**

201.    Defendants made false statements of material fact about Golars with the intent to defame its reputation within IDEM, within its industry of environmental consultants, and with is clientele, including that it engaged in criminal acts, it violated the False Claims Act, and that it "raped the Fund."

**ANSWER:    Louks denies all of the allegations in Paragraph 201 of the Complaint.**

202.    Defendants' communications set forth in rhetorical paragraph 204 were made with malice and were intended to cause financial damage to Golars.

**ANSWER:    Louks denies all of the allegations in Paragraph 202 of the Complaint.**

203.    Upon information and belief, Louks' communications set forth in rhetorical paragraph 204 were published in emails by Louks and on IDEM's VFC.

**ANSWER:    Louks denies all of the allegations in Paragraph 203 of the Complaint.**

204.    Accordingly, with respect to Count IV, Plaintiff Golars prays for the relief set forth below.

**ANSWER:    Louks denies all of the allegations in Paragraph 204 of the Complaint.**

### Count V – Commercial Disparagement

205.    Each preceding paragraph is incorporated herein by reference.

**ANSWER:    For his answer to Paragraph 205 of the Complaint, Louks adopts and incorporates his answers to each preceding paragraph by reference.**

206.    Plaintiff Golars brings this claim against Defendants IDEM and Louks.

**ANSWER:    Paragraph 206 contains no allegations pertaining to Louks and therefore no response is required.  To the extent a response is required, Louks denies all of the allegations in Paragraph 206 of the Complaint.**

207.    Defendants published false statements about Golars, including that it had engaged in criminal conduct, violated the False Claims Act, and it "raped the Fund," with the intent to harm Golars' economic interests and cause it to lose business and suffer financial and reputational damages.

**ANSWER:    Louks denies all of the allegations in Paragraph 207 of the Complaint.**

208.    Defendants knew or should have known that the published false statements were likely to harm Golars' economic interests.

**ANSWER:    Louks denies all of the allegations in Paragraph 208 of the Complaint.**

209.    Accordingly, with respect to Count V, Plaintiff Golars prays for the relief set forth below.

**ANSWER:    Louks denies all of the allegations in Paragraph 209 of the Complaint.**

**Count VI – Fraudulent Inducement**

210.    Each preceding paragraph is incorporated herein by reference.

**ANSWER:**    For his answer to Paragraph 210 of the Complaint, Louks adopts and incorporates his answers to each preceding paragraph by reference. Louks further states that his answers to Count VI are subject to a pending Motion to Dismiss.

211.    Plaintiffs Warren and USSBOA bring this claim against Defendants IDEM and Louks.

**ANSWER:**    Paragraph 211 contains no allegations pertaining to Louks and therefore no response is required. To the extent a response is required, Louks denies all of the allegations in Paragraph 211 of the Complaint.

212.    Defendants fraudulently induced Warren and USSBOA members to enter into Agreed Orders under the Policy by stating they had to do so under existing law.

**ANSWER:**    Louks denies all of the allegations in Paragraph 212 of the Complaint.

213.    Warren and USSBOA members were not required by law to enter into the Agreed Orders.

**ANSWER:**    Louks admits that Warren and any other entities or individuals who have settled disputes with IDEM by signing Agreed Orders did so voluntarily. Louks denies all of the remaining allegations in Paragraph 213 of the Complaint.

214.    Defendants promised Warren and USSBOA members that after they entered into the Agreed Orders that all of their costs and claims submitted for ELTF reimbursement would be processed in accordance with applicable rules and guidance.

**ANSWER:**    Louks denies that he or (to his knowledge) any other IDEM official or employee made any promises to Warren or any other person or entity who settled disputes with IDEM other than the promises contained in the Agreed Orders. Louks lacks sufficient

**knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 214 of the Complaint and therefore denies the same.**

215.    Defendants promised Warren and USSBOA members that after the entered into the Agreed Orders that the assumption of corrective action liability would not impact third party liability and that the responsible party would retain third party liability even after another party assumes corrective action responsibility.

**<u>ANSWER:</u>    Louks denies that he or (to his knowledge) any other IDEM official or employee made any promises to Warren or any other person or entity who settled disputes with IDEM other than the promises contained in the Agreed Orders. Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 215 of the Complaint and therefore denies the same.**

216.    Defendants promised Warren and USSBOA members that after the entered into the Agreed Orders that, unless they were also a responsible party, a party with potential liability for corrective action would no longer be liable for corrective action once a transaction affecting ownership or operation occurs.

**<u>ANSWER:</u>    Louks denies that he or (to his knowledge) any other IDEM official or employee made any promises to Warren or any other person or entity who settled disputes with IDEM other than the promises contained in the Agreed Orders. Louks lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 216 of the Complaint and therefore denies the same.**

217.    Defendants failed to state in the Policy to Warren and USSBOA members that after they entered into the Agreed Orders they would bear liability for all corrective action costs exceeding the ELTF cap until IDEM decides to issue a No Further Action order.

**ANSWER:    Louks denies all of the allegations in Paragraph 217 of the Complaint.**

218.    Defendants' promises were fraudulent misrepresentations specifically meant to induce Warren and USSBOA members into entering into the Agreed Orders.

**ANSWER:    Louks denies all of the allegations in Paragraph 218 of the Complaint.**

219.    As a result of Defendants' conduct, Warren and USSBOA members have been harmed.

**ANSWER:    Louks denies all of the allegations in Paragraph 219 of the Complaint.**

220.    Accordingly, with respect to Count VI, Plaintiffs Warren and USSBOA pray for the relief set forth below.

**ANSWER:    Louks denies all of the allegations in Paragraph 220 of the Complaint.**

### Count VII – Tortious Interference with Contractual Relationships

221.    Each preceding paragraph is incorporated herein by reference.

**ANSWER:    For his answer to paragraph 221 of Plaintiff's Complaint, Louks adopts and incorporates his answers to each preceding paragraph by reference.**

222.    Plaintiffs Golars, Daleen1, Sail, Warren, and USSBOA bring this claim against Defendants IDEM and Louks.

**ANSWER:    Paragraph 222 contains no allegations pertaining to Louks and therefore no response is required.  To the extent a response is required, Louks denies all allegations in Paragraph 222 of the Complaint.**

223.    Golars, Daleen1, Sail, Warren, and USSBOA had valid and enforceable contracts with suppliers, customers, financial institutions, and/or governmental entities.

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 223 of the Complaint and therefore denies the same.**

224.    Defendants knew of the existence of these valid and enforceable contracts.

**ANSWER:    Louks denies the allegations in Paragraph 224 of the Complaint.**

225.    Defendants' actions of refusing to reimburse ELTF claims IDEM was legally required to pay and forcing Golars, Daleen1, Sail, Warren, and USSBOA into Agreed Orders that were contrary to law intentionally intended to induce breaches of these contracts.

**ANSWER:    Louks denies the allegations in Paragraph 225 of the Complaint.**

226.    Defendants' actions were contrary to law and unjustified because they were based on an unlawful interpretation of what constitutes an eligible party for ELTF reimbursement.

**ANSWER:    Louks denies the allegations in Paragraph 226 of the Complaint.**

227.    Defendants' actions forcing those who should not have been liable for corrective actions to enter into the Agreed Orders making them liable was also contrary to law and unjustified.

**ANSWER:    Louks denies the allegations in Paragraph 227 of the Complaint.**

228.    Golars, Daleen1, Sail, Warren, and USSBOA suffered damages as a result of Defendants' wrongful inducement of breaches of these contracts.

**ANSWER:    Louks denies the allegations in Paragraph 228 of the Complaint.**

229.    Accordingly, with respect to Count VII, Plaintiffs Golars, Daleen1, Sail, Warren, and USSBOA pray for the relief set forth below.

**ANSWER:    Louks denies the allegations in Paragraph 229 of the Complaint.**

## **Count VIII – Tortious Interference with Prospective Business Relationships**

230.    Each preceding paragraph is incorporated herein by reference.

**ANSWER:    For his answer to Paragraph 230 of the Complaint, Louks adopts and incorporates his answers to each preceding paragraph by reference.**

231.    Plaintiffs Golars, Daleen1, Sail, Warren, and USSBOA bring this claim against Defendants IDEM and Louks.

**ANSWER:    Paragraph 231 contains no allegations pertaining to Louks and therefore no response is required.  To the extent a response is required, Louks denies all allegations in Paragraph 231 of the Complaint.**

232.    Golars, Daleen1, Sail, Warren, and USSBOA had valid business relationships with suppliers, customers, financial institutions, and/or governmental entities.

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 232 of the Complaint and therefore denies the same.**

233.    Defendants knew of the existence of these relationships through their dealings with each of the Plaintiffs.

**ANSWER:    Louks denies the allegations in Paragraph 233 of the Complaint.**

234.    Defendants' actions of refusing to reimburse ELTF claims IDEM was legally required to pay and forcing Golars, Daleen1, Sail, Warren, and USSBOA into Agreed Orders that were contrary to law intentional interfered with these relationships.

**ANSWER:    Louks denies the allegations in Paragraph 234 of the Complaint.**

235.    Golars, Daleen1, Sail, Warren, and USSBOA relied on the reimbursement that was already approved by in order to continue conducting their business with suppliers and customers.

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 235 of the Complaint and therefore denies the same.**

236.    The Agreed Orders caused interference with their relationships with financial institutions because those that agreed to enter into them took on liabilities on the property that adversely affected the value of that asset.

**ANSWER:    Louks lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 236 of the Complaint and therefore denies the same.**

237.    Defendants' actions were contrary to law and unjustified because they were based on an unlawful interpretation of what constitutes an eligible party for ELTF reimbursement.

**ANSWER:    Louks denies the allegations in Paragraph 237 of the Complaint.**

238.    Defendants' actions forcing those who should not have been liable for corrective actions to enter into the Agreed Orders making them liable was also contrary to law and unjustified.

**ANSWER:    Louks denies the allegations in Paragraph 238 of the Complaint.**

239.    Golars, Daleen1, Sail, Warren, and USSBOA suffered damages as a result of Defendants' wrongful interference with these relationships.

**ANSWER:    Louks denies the allegations in Paragraph 239 of the Complaint.**

240.    Accordingly, with respect to Count VIII, Plaintiffs Golars, Daleenl, Sail, Warren, and USSBOA pray for the relief set forth below.

**ANSWER:    Louks denies the allegations in Paragraph 240 of the Complaint.**

### Count IX — In the Alternative, Punitive Damages Against Louks

241.    Each preceding paragraph is incorporated herein by reference.

**ANSWER:    For his answer to Paragraph 241 of the Complaint, Louks adopts and incorporates his answers to each preceding paragraph by reference.**

242.    While Plaintiffs Golars, Daleenl, Sail, Warren, and USSBOA allege and maintain that Louks was acting within the scope of his employment with IDEM when he decided to engage in the malicious conduct described above, if this Court rules that Louks was acting outside of the scope of his employment Plaintiffs alternatively allege as follows:

**ANSWER:    Louks admits that he was acting within the course and scope of his employment at all times with regard to the Plaintiffs' ELTF claims, IDEM's ELTF policies, and any of Louks' communications regarding the Plaintiffs and their ELTF claims. Louks denies all of the remaining allegations in Paragraph 242 of the Complaint.**

243.    Louks at all time was acting outside the scope of his employment with IDEM when he purposely decided to engage in the malicious conduct aimed at Golars, Daleenl, Sail, Warren, and USSBOA, as described in this Complaint.

**ANSWER:    Louks denies the allegations in Paragraph 243 of the Complaint.**

244.    Louks' actions were willful and wanton and displayed reckless disregard for the health and safety of Hoosiers throughout the State of Indiana.

**ANSWER:    Louks denies the allegations in Paragraph 244 of the Complaint.**

245.    Accordingly, with respect to Count 1X, Plaintiffs Golars, Daleenl, Sail, Warren, and USSBOA pray for punitive damages and relief set forth below.

**ANSWER:    Louks denies the allegations in Paragraph 245 of the Complaint.**

## PRAYER FOR RELIEF

WHEREFORE, Defendant Douglas R. Louks, by counsel, respectfully asks that this court:

A. enter judgment in his favor and against the Plaintiffs and in his favor on all counts, claims, and causes of action stated in the Complaint;

B. award him a reasonable attorney's fee pursuant to 42 USC § 1988(b);

C. award him the costs of this action; and

D. award him all other proper relief in the premises.

## AFFIRMATIVE AND OTHER DEFENSES

1.     Plaintiffs' claims and the claims of the putative class members are barred by the provisions of Ind. Code § 13-23-8-7(a), which states: "The department, with respect to payment of claims, may not discriminate against any claimant. However, subject to this chapter, a claimant does not have an enforceable right to the payment of an ELTF claim."

2.     Plaintiffs' claims and the claims of the putative class members are barred by the provisions of Ind. Code § 13-23-8-7(b), which states: "This chapter does not create any obligation on the part of the state other than as specifically provided in this article."

3.     Plaintiffs' claims and the claims of the putative class members are barred in whole or in part because they have failed to exhaust their administrative remedies as required by Ind. Code § 13-23-9-4, Ind. Code § 4-21.5 *et seq.*, which "establishes the exclusive means for judicial review of an agency action." (Ind. Code § 4-21.5-5).

4.     Louks is unable to determine from the Complaint when the conduct alleged therein occurred. Plaintiffs' claims and the claims of the putative class members are barred in whole or in part to the extent that such conduct occurred outside the time period allowed by the applicable statutes of limitations.

5.       Louks is unable to determine from the Complaint when the conduct alleged therein occurred. To the extent that Plaintiffs' have neglected to pursue their claims and the claims of the putative class members for an unreasonable length of time and Plaintiffs' delay in asserting such claims has prejudiced Louks ability to defend those claims, they are barred in whole or in part by the doctrine of laches.

6.       Plaintiffs' claims and the claims of the putative class members were the subject of settlements with IDEM that were documented by agreed orders, and are thus barred by the doctrine of accord and satisfaction.

7.       Plaintiffs' claims and the claims of the putative class members against Louks are barred because at all times relevant to the Complaint, Louks was employed by IDEM, an executive agency of the State of Indiana, and was acting within the course and scope of his employment. Louks is thus immune from Plaintiffs' claims pursuant to Ind. Code § 34-13-3-3.

8.       Plaintiffs' claims and the claims of the putative class members against Louks for punitive damages are barred because at all times relevant to the Complaint, Louks was employed by IDEM, an executive agency of the State of Indiana, and was acting within the course and scope of his employment.  As such, punitive damages are prohibited against Louks by Ind. Code § 34-13-3-4(b).

9.       Plaintiffs' claims and the claims of the putative class members against Louks are barred by Ind. Code § 34–13–3–5, which bars claims against individual members and employees of Indiana governmental entities acting within the course and scope of their employment.

10.    Plaintiffs' claims and the claims of the putative class members against Louks are barred because Plaintiffs' Complaint fails to contain the mandatory allegations described in Ind. Code § 34–13–3–5(c).

11.    Plaintiffs' claims and the claims of the putative class members for defamation and commercial disparagement are barred because all statements Louks is alleged to have made were made in good faith to another individual or individuals with whom Louks shared a common interest in the integrity of the ELTF fund. Louks cannot be liable for such statements, which are protected by a qualified privilege.

12.    Plaintiffs' claims and the claims of the putative class members for defamation and commercial disparagement are barred because all statements Louks is alleged to have made were made in good faith to another individual or individuals entitled to act in the public's interest in the integrity of the ELTF fund. Louks cannot be liable for such statements, which are protected by a qualified privilege.

13.    Plaintiffs' claims and the claims of the putative class members for defamation and commercial disparagement are barred because all statements Louks is alleged to have made are true.

14.    Plaintiffs' claims and the claims of the putative class members for defamation and commercial disparagement are barred by Ind. Code § 34-7-7-5 because they are based on alleged statements that Louks made in furtherance of his First Amendment right to free speech, in connection with a public issue, and in good faith with a reasonable basis in law and fact.

15.    Plaintiffs' claims and the claims of the putative class members for fail to state a claim for fraudulent inducement upon which relief can be granted.

16.     Plaintiffs' claims are barred in whole or in part by the doctrines of maintenance and/or champerty. Plaintiffs have created material portions of their present claims, and maintained them, in a manner that constitutes maintenance and/or champerty.  Plaintiffs otherwise would have been strangers to claims they assert, but have volunteered to provide, and negotiated terms to provide, remediation services in the absence of any legal obligation by Plaintiffs to do so.  Plaintiffs have engaged in these actions for the purpose of generating and sustaining legal claims and litigation for remuneration, such that they may profit by assuming from third parties obligations and rights in which they had no legal interest.  In addition, Plaintiffs have performed such services, and engaged in strategies and tactics for claiming reimbursement from the ELTF, in a manner that seeks to extract unreasonable and inefficient cost reimbursements, and that threatens the financial viability of the ELTF, when, absent Plaintiffs' intermeddling, the legally obligated parties would not have created such claims, threats or conditions.

17.     The purported class claims made by Plaintiffs and members of the purported classes on whose behalf they purported to sue are precluded because the alleged conduct would have affected, if anyone, only an insubstantial number of putative class members.

18.     The purported classes cannot be certified under Federal Rule of Civil Procedure 23 because the purported classes, the class representatives and/or class counsel fail to meet the typicality, commonality, adequacy, superiority, and predominance requirement for class actions.

19.     Any adjudication of Plaintiffs' individual claim or those of the putative class will require individualized inquiry on the questions of injury and damages, such that imposition of liability and any award of damages or other relief against Louks on the basis of generalized class-wide proof will not satisfy the requirements of Federal Rule of Civil Procedure 23 and

further would violate Louks' Due Process and other rights under the Indiana and United States Constitutions.

20.     Plaintiffs' purported class claims are barred because the members of the purported classes are not so numerous that it would be impracticable and uneconomical to require joinder of each class member.

21.     Plaintiffs' purported class claims are barred because Plaintiffs' definitions of the purported classes are vague, not properly defined, ambiguous, not readily ascertainably, and overly broad.

22.     As a matter of constitutional right and substantive due process, Louks would be entitled to contest by jury trial his liability to any particular individual plaintiff, even if the purported representative of the putative classes prevail on his or her claims. Trying this case as a class action would violate the United States Constitution and the Constitution of the State of Indiana.

23.     Certification pursuant to Rule 23(c)(4) would not advance the cases of individual plaintiffs.

24.     Plaintiff USSBOA, which is self-described as an association, is not a proper class representative.

25.     Plaintiffs' claims and those of some or all of the putative class members may be barred due to their failure to have sustained any damages or ascertainable loss.

26.     Plaintiffs' claims and those of some or all of the putative class members may be barred due to their failure to have sustained a pecuniary loss.

27.     Plaintiffs' claims and the claims of the putative class members are barred because Plaintiffs and the putative class members lack standing to assert the causes of action

alleged in the Complaint as they are not the real parties in interest. The putative class members also lack standing because they have not suffered an injury in fact that is redressable by this action.

28.    Plaintiffs' claims and the claims of the putative class members for equitable relief are barred, in whole or in part, by the doctrine of unclean hands. By this action, Plaintiffs' seek remedies to circumstances that were caused by Plaintiffs' own misconduct, including, but not limited to: submitting ELTF claims with significant overcharges; submitting ELTF claims for wasteful, redundant, and unnecessary work; submitting ELTF claims with material errors and/or inaccurate representations; submitting duplicative ELTF claims; and, submitting incomplete ELTF claims.

29.    Plaintiffs' claims and the claims of the putative class members are barred in whole or in part because Plaintiffs failed to take reasonable steps to mitigate their damages, if any, including their decisions to incur costs on projects which they knew, or in the exercise of reasonable diligence would have known, would not be reimbursed by the ELTF Administrator.

30.    Louks is entitled to qualified immunity from damages under 42 U.S.C. § 1983 with respect to any claim for damages based upon federal constitutional principles or federal law because his actions were objectively reasonable and did not violate clearly established law.

31.    Plaintiffs' Complaint fails to state an actionable claim for relief under 42 U.S.C. § 1983 to the extent Louks was not personally involved in the violations of a federally secured right. There is no liability in an action under 42 U.S.C. § 1983 absent direct personal involvement, and there is no *respondeat superior* liability.

32.    Plaintiffs' claims against Louks "in his official capacity" are barred because they are duplicative and redundant of their claims against IDEM, which is the real party in interest.

33.     Louks denies all allegations not expressly admitted and specifically reserves all affirmative or other defenses that it may have against the putative class.  It is not necessary at this time for Louks to delineate such defenses against the putative class because it has not been certified. Further, the putative class members are not parties to this litigation.

34.     Louks incorporates by reference any and all defenses asserted by any other defendant or intervening party at any point in these proceedings, regardless of whether the party is later dismissed.

35.     Louks reserves the right to amend and/or supplement his Affirmative Defenses in the event additional defenses become available, as his legal theories change, or as additional facts are made available by discovery.

## DEMAND FOR JURY TRIAL

Defendant Douglas R. Louks hereby demands that all issues presented by the pleadings in this matter that are properly triable by jury be so tried.

Respectfully submitted,

ICE MILLER LLP


 _/s/  Donald M. Snemis_____
Donald M. Snemis, Atty. No. 14074-71
Judith S. Okenfuss, Atty. No. 16157-49
Derek R. Molter, Atty. No. 27260-53
Kyle T. Finnegan, Atty. No. 6320608

*Attorneys for Douglas R. Louks*